## UNITED STATES v. MITCHELL.

(District Court, N. D. Ohio, W. D. December 12, 1893.)

No. 826.

CENSUS—REFUSAL TO ANSWER QUESTIONS—CORPORATE OFFICERS.

The provision of the act of July 6, 1892, imposing a penalty for refusal to answer questions upon officers of corporations engaged in pro-

ductive industry, from which or from whom answers "are herein required," is ineffective, because there is no provision, in that or any other act, requiring such corporations or their officers to answer the questions.

At Law. Indictment of Jethro G. Mitchell for refusing to answer questions put to him by a census official. On demurrer to the indictment. Sustained, and indictment quashed.

Allan T. Brinsmade, U. S. Dist. Atty.

Frank Hurd and Joseph Cummings, for defendant.

RICKS, District Judge. The defendant is the treasurer of the Mitchell & Rowland Lumber Company, a corporation organized under the laws of Ohio, and on the 20th day of April, 1893, engaged in "a productive industry," to wit, the manufacture of lumber and lath, in this district and division, and in the first supervisor's district of Ohio. He is indicted under an act of congress approved July 6, 1892, which is "An act amendatory of an act entitled 'An act to provide for the taking of the eleventh census,'" for refusing and failing to make answers to certain questions propounded to him by David A. Alexander, a special agent of the census office, who was duly employed, appointed, commissioned, and sworn to obtain information in the first supervisor's district of Ohio from corporations engaged in any productive industry, which information was called for and specified in a special schedule, No. 5, approved by the secretary of the interior, in accordance with the provisions of the act of congress named.

The questions which the defendant so refused to answer are set forth in the indictment as follows: A question as to the name of the corporation of which said defendant was then and there the treasurer; a question as to when the establishment of which defendant was treasurer commenced operations; a question as to the kind of goods manufactured by said corporation; a question as to the capital invested in logging, in mill plant, and in live capital; a question as to labor and wages; a question as to material used; a question as to months in operation; a question as to the number of hours in the ordinary day of labor; a question as to the power used in manufacture; a question as to the transportation of logs, how transported to mill, quantity transported during the year, cost of transportation, miles of logging railway used; a question as to number of acres of timbered land, or standing timber, owned by said corporation; a question as to what sawing machinery the said corporation possessed; a question as to whether colored persons had capital invested in the establishment of which the defendant was treasurer. These are the material averments of the indictment, sufficiently set forth for the purpose of considering the questions now involved.

The first defense interposed is that the acts of congress upon which the indictment is predicated do not make it an offense for the president, or other officers named, of a corporation or firm engaged in any productive industry, to refuse to answer the inquiries contained in the schedules prepared by the census bureau, and propounded by the representatives of the census superintend-

ent.    Congress unquestionably intended to impose upon such officers the duty to answer such questions, and to prescribe a penalty for a refusal so to do.    Do the acts impose such duty?    The act of March 3, 1879, (1 Supp. Rev. St. p. 471,) under which the census for 1880 was taken, in section 14, required that the heads of families, or, in their absence, any other member or agent, should, if thereto requested by the census enumerator, etc., "render a true account of every person belonging to such family, in the various particulars required by law," and provided a punishment for a refusal or failure to do so.    The second paragraph of the same section provided "that every president, treasurer    *    *    *    or managing director of every corporation from which answers to any of the schedules provided for by this act are herein required, who shall, if thereto requested, *    *    *    neglect or refuse to give true and complete answers to any inquiries authorized by this act    *    *    *    shall forfeit and pay," etc.    This was the first provision of law that seemed to contemplate compulsory answers from corporations to questions propounded by enumerators or other officers of the census bureau. The first paragraph above quoted not only required the census enumerators to obtain from heads of families, or from their agents or representatives, the information required by law, but imposed a duty upon such persons to give the information required, with a penalty for failing or refusing so to do; but the blank forms and schedules furnished by the secretary of the interior to enumerators for ascertaining statistics and facts concerning products of industry provided only for such information as the persons interested voluntarily imparted.    The second paragraph, as already quoted, provided both a penalty and punishment for officers of corporations "from which answers to any of the schedules provided for by this act are herein required," who shall, if thereto requested by the supervisor, enumerator, etc., refuse or fail to answer any inquiries authorized, etc.    Section 17 of the same act extended the scope of the schedules used in the tenth census, and provided that the superintendent of the census shall require and obtain from every railroad, express, telegraph, life insurance, and fire and marine insurance company the facts specifically set forth in the law as to the business of each of said kind of public or quasi public corporations.    This was the first provision of any legislative act authorizing a census to be taken, which contained a clause requiring the superintendent of census to obtain information of the character indicated from such corporations.    In a note by the editor and compiler of the supplement (volume 1) to the Revised Statutes, referring to this act, it is said:

"This act seems to supersede all the provisions of the Revised Statutes on the subject, retaining, by section 17, the schedules set forth in Rev. St. § 2206."

The only provision of law in force prior to the act of March 3, 1879, above referred to, relating to the compulsory answers to the questions of census enumerators, was section 2191 of Revised Statutes, which provided:

"Every person more than twenty-one years of age belonging to any family residing in any subdivision and in case of the absence of the head and other members of any such family, then any agent of such family shall upon the request of the marshal or his assistant, render a true account to the best of his knowledge of every person belonging to such family, in the various particulars required herein, and the tables hereto subjoined; and for any refusal whatever to answer either of the inquiries authorized by law, such persons shall be liable to a penalty of thirty dollars, to be sued for and recovered in an action by the assistant marshal for the use of the United States."

This provision of the statutes was substantially re-enacted in the first paragraph of section 14 of the act of March 3, 1879, and the second provision, as before quoted, was no doubt intended to provide a punishment for officers of corporations who refuse to comply with the law. The next legislation, in order of time, was the act of March 1, 1889, (25 Stat. 760.) In that act the second paragraph of section 14, last above referred to, is amended by the second paragraph of section 15, and extended as to the officers to be included, and repealing the penalty part of the punishment, and extending the latter to fine or imprisonment. This paragraph of section 15 was again amended by the act of July 6, 1892, (27 Stat. 86,) which reads as follows:

"An act amendatory of an act entitled 'An act to provide for the taking of the eleventh census.'

"Be it enacted by the senate and house of representatives of the United States of America in congress assembled, that sections 15 and 17 of the act entitled 'An act to provide for taking the eleventh and subsequent censuses,' approved March 1, 1889, be and the same are hereby amended so that the superintendent of census shall be required to obtain from every incorporated and unincorporated company, firm, association, or person engaged in any productive industry, the information called for and specified in general and special schedules heretofore approved, or to be hereafter approved by the secretary of the interior. And every president, treasurer, secretary, agent, director or other officer of every corporation engaged in such productive industry, and every person, firm, manager, or agent of unincorporated companies, and members of firms, associations or individuals likewise engaged in such productive industry from which or from whom answers to any of the inquiries contained in the said schedules are herein required, who shall if thereto requested by the superintendent of census, supervisor, enumerator, or special agent, or each or any of them, wilfully neglect or refuse to give true and complete answers to any inquiry or inquiries contained in the said schedules, or shall wilfully give false information in respect thereto, shall be deemed guilty of a misdemeanor and on conviction thereof shall be fined in a sum not exceeding ten thousand dollars, to which may be added inprisonment for a period not exceeding one year, and all acts or parts of acts in conflict herewith are hereby repealed."

These several acts clearly indicate that it was the intent of congress to impose a duty upon the officers of corporations engaged in any productive industry to answer such questions as the schedules contain, or such as might be propounded by the enumerators, special agents, or other persons duly authorized by the superintendent of census to gather the information desired. But a careful examination of all the acts published impels me to the conclusion that no such duty was imposed. The act of July 6, 1892, was evidently passed upon the assumption that the answers to inquiries "herein required" were to be compulsory because of some duty imposed by

some other section. The language in all the acts cited clearly implies that, in some other sections of the act, provisions were contained which required the corporations and firms named to answer the questions contained in the schedule. The offense contemplated by the act is refusing to answer questions propounded in the printed schedules, which it was assumed the law required to be answered, and which the officer requested to be answered; but, as before stated, no such duty was imposed by either of the acts. A duty of that character is imposed by a distinct provision of law upon the head of a family, or the other persons required to make answer in his absence, and the requirement as to them is clearly defined to be to "render a true account, to the best of his or her knowledge, of every person belonging to such family, in the various particulars required by law."

By section 17 of the act of March 3, 1879, as amended by the act of March 1, 1889, the duty is imposed upon the superintendent of census to "require and obtain" from every railroad, telegraph, express and insurance company described in that act, the information therein designated. Under the act upon which this indictment is based, the superintendent of the census is "required to obtain * * * the information called for and specified in the schedules, * * * to be approved by the secretary of the interior." Here the superintendent is required to obtain information "from firms engaged in productive industries." In the case of the railroad, telegraph, and other corporations covered by the act of 1879, the superintendent is directed to "require from every railroad corporation the following facts." In the one case, the superintendent is required to obtain information; in the other, the railroad companies are required to give information. In the one case, a duty is imposed upon the superintendent; in the other, it is imposed upon the corporation. But it may be said that congress manifestly intended to impose such a duty, and that it is clearly implied from the law. But this is a criminal proceeding, and, to confer jurisdiction upon the federal courts in such cases, an offense must be clearly defined and created by statute. We have no jurisdiction over any other offenses. In the case of U. S. v. Hudson, 7 Cranch, 32, Mr. Justice Johnson, speaking for the supreme court, said: "The legislative authority of the Union must first make an act a crime, affix a punishment to it, and declare the court that shall have jurisdiction of the offense." In U. S. v. Lancaster, 2 McLean, 431, the court declared: "Nothing can be punished, under the laws of the United States, which is not made criminal by statute." This limits the jurisdiction of the federal courts to statutory offenses. We cannot extend the law to cover a failure to do an act required to be done only by implication of law. To make the failure or refusal to perform a duty a criminal offense cognizable in this court, the act of congress must clearly define that duty and declare the punishment. That has not been done.

The next objection to the indictment is that "the act of congress under which said pretended indictment is founded is unconstitutional and void, for the reason that congress had no constitutional

authority to pass said act." The authority for such legislation is based on article 1, § 2, par. 3, of the constitution, which provides:

"Representatives and direct taxes shall be apportioned among the several states which may be included in the Union according to their respective numbers. * * * The actual enumeration shall be made within three years after the first meeting of congress and within every subsequent term of ten years, in such manner as they shall by law direct."

Article 1, § 9, par. 4, provides:

"No capitation or other direct tax shall be laid unless in proportion to the census of enumeration hereinbefore directed to be taken."

It is contended that the object of the enumeration is to ascertain the numbers so as to establish a basis for representative apportionment and for direct taxes. Direct taxes are either capitation taxes or land taxes, and, when levied by congress, it fixes so much as lies among the different states according to their numbers, not according to their property or wealth; so representation is based not upon property or wealth, but upon numbers. Therefore, to accomplish the object in view, it is not necessary to inquire as to property, or wealth, or business. Chief Justice Marshall in Loughborough v. Blake, 5 Wheat. 317, declared:

"The direct and declared object of the census is to furnish a standard by which representatives and direct taxes may be apportioned among the several states which may be included in this Union."

It is further contended that congress has only such legislative powers as are expressly conferred, and it cannot be claimed that a power to take an enumeration for the purposes above declared confers, by implication, a power to ascertain the value of property or the methods of using it.

It is further earnestly contended that the legislation hereinbefore considered, seeking a compulsory answer to inquiries about business and property, is violative of certain provisions of the bill of rights and the constitution. Article 4 of the bill of rights provides:

"The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated, and no warrants shall issue but upon probable cause," etc.

It is urged that the demand of a special agent of the census bureau, under the act of congress, from the defendant, of his books and papers, that he might search them for information, would be a violation of this provision of the bill of rights, and that there would be no difference between such a demand and the requirement to compel him to furnish the same information at his own expense, upon penalty of fine or imprisonment for failure so to do. In either case, the books and papers of the citizen are searched and seized. Article 5 of the bill of rights provides:

"Nor shall any person be deprived of life, liberty or property without due process of law, nor shall private property be taken without just compensation."

These reasons are urged with great force against the validity of this legislation.

In view of the conclusion reached under the first objection to this indictment, I might possibly pass this graver objection without further consideration of the claims of counsel, as above stated. But as future legislation will be necessary to remedy the defect found in existing statutes, should this opinion be affirmed by the supreme court, it may not be amiss to suggest that there may be a limit to the power of congress to compel a citizen to disclose information concerning his business undertakings, and the manner in which they are carried on. This limit must relate, not only to the kind of information he may properly refuse to disclose, because it may be equivalent to the appropriation of private property for public use without just compensation, but also to the extent of the information required, as well as to the time within which it shall be given. Certain kinds of information valuable to the public, and useful to the legislative branches of the government as the basis for proper laws, have heretofore been voluntarily given, and may properly be required from the citizen, when it is not of property value, or when the collection, compilation, and preparation thereof does not impose great expense and labor for which compensation is not provided. It is not infrequent, however, that answers to questions propounded in some schedules, if fully and properly prepared, involve the collection and compilation of facts that require the labor of a large force of clerks for days and weeks, entailing great expense and embarrassment to the ordinary business of the citizen. Is it within the power of congress to make such answers compulsory, and require the citizen to neglect his usual business, with loss, and to prepare this information at a great personal expense, without proper compensation? Or if a citizen, by his long experience in a special line of business, and by his superior organizing and administrative ability, has so systematized it that he can carry it on at a much less expense and with greater facility than others, is it right to compel him to disclose the information so acquired, and thereby open to his rivals in trade the methods by which he has been able to outstrip them in the sharp competition for business? Is not the system so established, and the knowledge so acquired, as much a property right to him as the land and shop in which he conducts his business? and can he be compelled to part with the former without due compensation more justly than with the latter? The zeal with which such information is sometimes solicited to maintain favorite theories of public officials, or to afford the basis for discussing economical questions, often leads to excesses, and imposes upon the citizen duties for which no just compensation is afforded, either in money, or in his proportion of the reward of the good results to follow to the public.

As before stated, when such information is required as the basis for proper legislation or the just enforcement of the public laws, the power to compel its disclosure may exist, and, if unusual expense attends its preparation, proper remuneration to the citizen can be made; but the suggestion that information having a property value may be demanded, which the citizen may not be obliged to impart without due compensation, so earnestly pressed by the

learned counsel in this case, still remains undisposed of, and a proper subject for consideration by congress in the future legislation that may be needed to enforce such demands by the census bureau. Of course, these suggestions are not intended to apply to the power of congress to compel answers to questions, propounded to the officers of railroads, telegraph, and insurance companies, corporations of a public character, over the business methods of which the legislative power may be asserted. As to such corporations, the public good requires that wholesome and strict supervision should be exercised, and all the information needed as the basis for such regulation and control should be produced when required. In view of the conclusion reached, it is not necessary to consider other objections urged to the indictment.

The demurrer will be sustained upon the first proposition considered, and the motion to quash is allowed.