## UNITED STATES v. MORIARITY.

(Circuit Court, S. D. New York. February 20, 1901.)

1. CENSUS—FICTITIOUS RETURNS—INDICTMENT—SUFFICIENCY.

An indictment for making a false and fictitious census return is sufficient, though it fails to charge that it was made to the supervisor of the district, since that official is the only one authorized to receive it.

2. SAME.

An indictment under the census act of March 3, 1899, which punishes the making of a "false certificate and fictitious return," is not bad because it charges the making of a false and fictitious return, since there may be a false certificate without a fictitious return, but there cannot be a fictitious return that is not false.

3. SAME.

An indictment for making a false and fictitious census return is sufficient though it fails to state that the form on which it was made was prescribed by the director of the census, the presumption being that no other form was used, in the absence of allegations to the contrary.

4. SAME.

An indictment for making a false and fictitious census return is not defective because a portion of such return contains information not required by statute, and omits information demanded.

5. SAME—CENSUS ACT—CONSTITUTIONALITY.

So far as the government seeks voluntary information relating to manufacturing and mechanical establishments, the census act of March 3, 1899, is not violative of the provision of the federal constitution that private property shall not be taken for public use without compensation.

6. SAME.

A person sworn to obtain information relating to manufacturing and mechanical establishments, required by the census act of March 3, 1899, cannot make a fictitious return and escape punishment on the ground that

the act violates the provision of the federal constitution that private property shall not be taken for public use without compensation.

7. SAME.

The functions vested in the national government authorize the obtainment of information relating to manufacturing and mechanical establishments demanded by the census act of March 3, 1899, though Const. art. 1, § 2, par. 3. and section 9, merely direct congress to take a census of the population for the purpose of apportioning representatives and direct taxes.

William V. Moriarity was charged with having made a fictitious census return, and demurred to the indictment. Demurrer overruled.

Henry L. Burnett, U. S. Atty. (William S. Ball, of counsel).

Kellogg & Rose (Abram J. Rose, of counsel), for defendant.

THOMAS, District Judge. The following discussion relates to the sufficiency of an indictment charging a special agent with having made a "fictitious return," within the meaning of section 21 of the census act of March 3, 1899, which provides for the punishment of such agent "if he shall willfully and knowingly make a false certificate or fictitious return." The act enjoins the collection of information by supervisors, enumerators, and special agents (section 6); confers on special agents an equal authority with enumerators (section 17); charges each enumerator with the collection in his subdivision of the facts and statistics required by the population schedule, "and such other schedules as the director of the census may determine shall be used by him in connection with the census, as provided in section 7 of this act," and enjoins that "it shall be the duty of each enumerator to forward the original schedules, duly certified, to the supervisor of census of his district as his returns under the provision of this act" (section 12). The act further provides that, "whenever he shall deem it expedient, the director of the census may withhold the schedules for said manufacturing and mechanical statistics from the enumerators of the several subdivisions in any or all cases, and may charge the collection of these statistics upon special agents, to be employed without respect to locality." Section 7. Section 7 provides "that the twelfth census shall be restricted to inquiries relating to the population, to mortality, to the products of agriculture and of manufacturing and mechanical establishments." The present question concerns inquiries relating to manufactures. Section 7 provides in this regard that:

"The schedules of inquiries relating to the products of manufacturing and mechanical establishments shall embrace the name and location of each establishment; character of organization, whether individual, co-operative, or other form; date of commencement of operations; character of business or kind of goods manufactured; amount of capital invested; number of proprietors, firm members, co-partners, or officers, and the amount of their salaries; number of employés, and the amount of their wages; quantity and cost of materials used in manufactures; amount of miscellaneous expense; quantity and value of products; time in operation during the census year; character and quantity of power used, and character and number of machines employed. The form and subdivision of inquiries necessary to secure the infor-

mation under the foregoing topics relating to manufacturing and mechanical industries shall be in the discretion of the director of the census. The information collected shall be of and for the fiscal year of such corporations or establishments having its termination nearest to and preceding the first of June, nineteen hundred."

The indictment charges that defendant, on October 11, 1900, "being then and there a special agent appointed under and by authority of an act of congress entitled 'An act to provide for taking the twelfth and subsequent censuses,' approved March 3, 1899, and having taken and subscribed his oath of office as such special agent as prescribed by the director of the census, did unlawfully, willfully, and knowingly make a false and fictitious return in and upon 'Schedule 3—Manufacturers,' being upon a form consisting of four pages, commencing on the first page thereof with the figures and words, '7–469. Twelfth census of the United States,' the said return purporting to be that of one Joseph Silverman, of New York City, at number 4 Montgomery street, post office address, 'N. Y. City'; and the said false and fictitious return, at the time the same was so made, was in the words and figures following, that is to say." Then follows what purports to be Form 7–469, bearing the heading, "Twelfth Census of the United States. Schedule No. 3—Manufacturers." Following this are spaces to be filled and signed by the special agent or enumerator, showing the state, country, supervisor's district number, enumeration district number, and the date when the collection of the information was made, all of which, save the supervisor's district number and enumeration district number, purport to be filled. The apparent subscription of the defendant follows. Thereafter there are provided spaces for the name of the establishment, which is omitted, for the name of the corporation, firm, or individual owner, the location of the factory or shop, city or town, street and number, post office, all of which purport to be filled, and immediately below this is the following:

"Department of the Interior, Census Office.

"Washington, D. C., June 1, 1900.

"The information returned on this schedule should cover the business year of the establishment most nearly conforming to and preceding the census year which ends June 1, 1900. All answers will be held absolutely confidential. No publication will be made in the census reports disclosing the names or operations of individual establishments in any particular. Special agents and enumerators of the census are liable to a penalty of $500 if they disclose any information obtained in their official capacity.

"William R. Merriam, Director of the Census."

Below this is printed an extract from the act of congress of March 3, 1899 (section 22), and below that the heading "Certificate," with this underwritten: "This is to certify that the information contained in this schedule is complete and correct, to the best of my knowledge and belief." This purports to be signed by Joseph Silverman, over the printed words, "[Signature of the person furnishing the information.]" Following this are printed questions calculated to elicit the information required by section 7 of the act, and written answers tending to give the same, but not covering all the information required, and, in some instances, asking for information not required, as the defendant now contends.

The indictment further charges as follows:

"And the said return, so appearing upon the said form, was then and there a sham, a fabrication and invention, the same being false, untrue, and fictitious in the parts thereof written and supplied and added to the printed parts of said form,—that is to say, the fillings-in of the same,—so that the said return as a whole became and was false, fictitious, and fraudulent, and contrary to the meaning of the said act of congress relating to manufacturing and the returns of schedules concerning the same; and he, the said William V. Moriarity, then and there well knew that the said return was false, fictitious, and fraudulent in the respects hereinbefore set forth. And so the jurors aforesaid, on their oaths aforesaid, do say that William V. Moriarity, in manner and form aforesaid, at and in the district aforesaid, and within the jurisdiction of this court, on the said 11th day of October, in the year of our Lord nineteen hundred, having taken and subscribed the oath of office required by the act of congress aforesaid, did unlawfully, willfully, and knowingly make a fictitious return, against the peace of the United States and their dignity, and contrary to the form of the statute of the United States in such case made and provided."

The other counts of the indictment are similar in their legal effect.

The objections to the indictment will be considered seriatim.

First Objection. There is no sufficient allegation that the defendant made the return to any one authorized by statute to receive it. The charge is that the defendant, a special agent under the act described, made a fictitious return as above indicated. The act provides that the return shall be made to the supervisor, and to him alone could it be made by a special agent. There is no occasion to state that he made the return to the supervisor, when there is specific description of the agent's official position, duties, and the law under which he qualified and was acting, and the return has a particular and single meaning under that act, and can be made to one official, and one only. The indictment is not faulty in this regard.

Second Objection. The statute punishes the making of a false certificate and fictitious return, while the indictment charges the making of a false and fictitious return. The fact is that the indictment charges a fictitious return. On the first page the statement is that the return is "false and fictitious"; later, the allegation is that the return was "a sham, a fabrication and invention, the same being false, untrue, and fictitious in the parts thereof written and supplied and added to the printed parts of said form," etc., as above quoted; and, finally, the charge is that the defendant made a "fictitious return." It is difficult to understand how an accusation that a return was pure invention could be more amply and clearly described. There might be a false certificate without a fictitious return, but there could not be a fictitious return that was not false.

Third Objection. There is no allegation that the form upon which the return was made was prescribed and adopted by the director of the census. But there is a letter of direction on the return, purporting to be signed by the director of the census. There is no presumption that the defendant forged the letter, and there is no charge to that effect in the indictment, but the presumption is that the name and official title of the director of the census was attached by his

order. Moreover, an agent authorized to obtain information, under-taking by his oath to do so, and purporting to do so, would be presumed to use a form authorized for that purpose in the absence of negative statement in the indictment; and to this may be added the suggestion that the statute directs the agent to obtain the information, and a charge that he undertook to do so and made a fictitious return would be sufficient. By the statute, the "form and subdivision of inquiries" are "in the discretion" of the director of the census. If the director neglected to provide for "form and subdivision," and the defendant assumed to perform the duty of conducting the inquiries laid upon him by the statute, he would offend, if he made a fictitious return, wherever he got the form. It would not lie with him to excuse his offense upon the ground that he did not employ a form and subdivision adopted by the director.

Fourth Objection. The return purports to contain information not required by the statute, and omits inquiries demanded. The surplusage, if any, is exceptional, as are the omissions. Does this excuse the defendant for fabricating what the statute authorizes? It is thought not.

Fifth Objection. The census act is unconstitutional; hence the defendant's fabrication is not punishable. It is urged that the power of the general government to order a census is given and limited by article 1, § 2, par. 3, of the constitution, relating to the apportionment of representatives and direct taxes among the several states according to their respective numbers, and the direction that "the actual enumeration shall be made within three years after the first meeting of the congress of the United States and within every subsequent term of ten years in such manner as they shall by law direct," read in connection with the fourth subdivision of section 9, "that no capitation or other direct tax shall be laid unless in proportion to the census hereinbefore directed to be taken," and the second section of the fourteenth amendment, that "representatives shall be apportioned among the several states according to their respective numbers, counting the whole number of persons in each state excluding Indians not taxed," which section provides that, upon conditions mentioned, the basis "shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such state." Moreover, it is contended that the inquiry directed with relation to manufactures is invalid, by virtue of article 5, that no person "shall be deprived of life, liberty or property without due process of law, nor shall private property be taken for public use without just compensation"; and, in support of this contention, the discussion of Judge Ricks, in U. S. v. Mitchell (D. C.) 58 Fed. 993, is invoked. Respecting the provision last quoted, it is sufficient to observe that the person whose life, liberty, or property may not be jeopardized is not objecting, and that, if the provision that answers to the inquiries might be coerced were invalid, yet the remainder of the act would not fall with the void part. So far as the government sought and received voluntary information, the act would not be open to the criti-

cism suggested. But a statute is assumed to be valid until some one complains whose rights it invades. Even such person may waive a constitutional provision made for his benefit. People v. Brooklyn, F. & C. I. R. Co., 89 N. Y. 75, 93. A person who has sworn to gather the information may not fabricate it and invoke the protection of the constitution made in favor of the rights of citizens, which rights the accused, as charged, falsely pretends to have violated.

Respecting the suggestion that the power of congress is limited to a census of the population, it should be noticed that at stated periods congress is directed to make an apportionment, and to take a census to furnish the necessary information therefor, and that certain representation and taxation shall be related to that census. This does not prohibit the gathering of other statistics, if "necessary and proper," for the intelligent exercise of other powers enumerated in the constitution, and in such case there could be no objection to acquiring this information through the same machinery by which the population is enumerated, especially as such course would favor economy as well as the convenience of the government and the citizens. In McCulloch v. Maryland, 4 Wheat. 316, 4 L. Ed. 579, Judge Marshall said "he would be charged with insanity who should contend that the legislature might not superadd to the oath directed by the constitution such other oath of office as its wisdom might suggest." It would be curious governmental debility that should incapacitate the nation from directing its census enumerator to ask an inhabitant concerning his business because for certain purposes he was only to be counted, and perhaps his gender ascertained. The functions vested in the national government authorize the obtainment of the information demanded by section 7 of the census act, and the exercise of the right befits an exalted and progressive sovereign power, enacting laws adapted to the needs of the vast and varied interests of the people, after acquiring detailed knowledge thereof. Illustrations of this ability and duty of the government to make the researches involved in the act of congress under consideration by far outrun the necessities of the present decision, and awaken a just satisfaction that the federal government is not a crippled and resourceless dependent, but rather a living political entity, sovereign within its just sphere, meeting its ever-widening obligations, and making large contributions to the welfare of its citizens and to the world. While purely internal affairs of the states are and should be beyond the power of the federal government, the powers that the constitution has imposed bring it into close intimacy with all the activities of the people, whatever their pursuits or conditions. For the national government to know something, if not everything, beyond the fact that the population of each state reaches a certain limit, is apparent, when it is considered what is the dependence of this population upon the intelligent action of the general government. Sanitation, immigration, naturalization, the opening and development of the public domain; the laying of taxes, duties, imposts, and excises, involving the adjustment of duties for the purposes of revenue to the domestic products of every kind, and the taxation

of industries, as illustrated in the laws for collecting an internal revenue, and in what is known as the "War Revenue Tax Law"; the fostering of exports; the immense appropriation annually for the development and improvement of waterways for the purposes of commercial interchange between the states and the states and foreign nations; the establishment of post offices and post roads; the chartering of corporations for the convenient reception and distribution of money to meet the convenience and exigencies of trade; the institution of a just system of bankruptcy; the promotion of highways of travel by railway and otherwise; vigilant protection and helpful interest in suggested facilities of transportation in other countries; a judicious consideration of giving or withholding aid to our merchant marine; the necessity of providing a suitable volume of money for the purpose of facilitating the exchange of commodities; the making of commercial treaties with foreign countries and establishing reciprocal trade relations with the same; the building of ships, forts, and public buildings; the equipment and maintenance of armies,— for these and similar purposes the government needs each item of information demanded by the census act, and such information, when obtained, requires the most careful study, to the end that the fulfillment of the governmental function may be wise and useful. If one shall select any of the powers reposed in the federal government as above indicated, and the enumeration is not complete, and consider thoughtfully the direct essential aid that the information, in whole or in part, sought by the act, must give, he will not hesitate to ascribe plenary ability to congress to obtain such information. A government whose successful maintenance depends upon the education of its citizens may not blindly legislate, but may exercise the right to proclaim its commands, after careful and full knowledge of the business life of its inhabitants, in all its intricacies and activities. The demurrer should be overruled.