**UNITED STATES of America,**
**Appellee,**

v.

**Victor SHARROW, Appellant.**

**No. 328, Docket 27337.**

United States Court of Appeals
Second Circuit.

Argued May 2, 1962.

Decided Sept. 28, 1962.

Concurring Opinion Oct. 10, 1962.

Robert M. Morgenthau, U. S. Atty., S. D. N. Y. (Irving Younger, Sheldon H. Elsen, Asst. U. S. Attys., of counsel), for appellee.

Victor Sharrow, pro se.

Before LUMBARD, Chief Judge, and WATERMAN and FRIENDLY, Circuit Judges.

WATERMAN, Circuit Judge.

Section 2 of the Fourteenth Amendment to the United States Constitution reads as follows:

"Section 2. Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State, excluding Indians not taxed. But when the right to vote at any election for the choice of electors for President and Vice President of the United States, Representatives in Congress, the Executive and Judicial officers of a State, or the members of the Legislature thereof, is denied to any of the male inhabitants of such State, being twenty-one years of age, and citizens of the United States, or in any way abridged, except for participation in rebellion, or other crime,

the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such State."

Paragraph 3 of Section 2 of Article I of the Constitution of the United States provides that "Representatives * * * shall be apportioned among the several States which may be included within this Union, according to their respective Numbers * * *. The actual Enumeration shall be made within three Years after the first Meeting of the Congress of the United States, and within every subsequent Term of ten Years, in such Manner as they [the Congress] shall by Law direct."

In 1957 the Congress, preparatory to the taking of a decennial census in the year 1960, passed the following act:

"§ 141.   Population, unemployment, and housing

"(a) The Secretary (of the Department of Commerce) shall, in the year 1960 and every ten years thereafter, take a census of population, unemployment, and housing (including utilities and equipment) as of the first day of April, which shall be known as the census date.

"(b) The tabulation of total population by States as required for the apportionment of Representatives shall be completed within eight months of the census date and reported by the Secretary to the President of the United States."   13 U. S.C. § 141.

Just prior to April 1, 1960, the Bureau of the Census distributed an "Advance Census Report for the 1960 Census of Population and Housing" to all householders in the nation.[1]  This report form stated that the census was required by the United States Constitution and was further authorized by certain sections of Title 13 U. S. Code, including Section 141, quoted above.  The report form also stated that: "As provided in the Constitution, the Census will determine the number of seats in Congress to be apportioned to each State."

The "Advance Census Report" form contained many questions relative to the status and personal history of the members of a household.  From the answers to these questions the Census Bureau could compute for each state the "whole number of persons in each State," and "the male inhabitants of such State, being twenty-one years of age, and citizens of the United States"; but there was no question in the Report form designed to ascertain whether "the right to vote at any election * * * is denied to any of the male inhabitants of such State, being twenty-one years of age, and citizens of the United States."

Appellant, Victor Sharrow of Crompond, New York, who had written and published a book called "Unconstitutional Congressional Government" and who for some years had made a special historical study of Section 2 of the Fourteenth Amendment, received an Advance Census Report Form.  He did not fill out the form and when, on April 6, 1960, a census enumerator called at his home to accept his answers he refused to give any and thereby violated 13 U.S.C. § 221(a) (1958).[2]  In substance, he explained to the enumerator that it was his belief that the United States House of Representa-

---

1. This form is a schedule designed to obtain the information required for the 1960 decennial census.  The use of it is authorized by 13 U.S.C. § 5, which reads:
"§ 5.   Schedules; number, form, and scope of inquiries
"The Secretary shall prepare schedules, and shall determine the inquiries, and the number, form, and subdivisions thereof, for the statistics, surveys, and censuses provided for in this title."

2. 13 U.S.C. § 221(a) reads as follows:
"§ 221.   Refusal or neglect to answer questions;  false answers
"(a) Whoever, being over eighteen years of age, refuses or willfully neglects, when requested by the Secretary, or by any other authorized officer or employee of the Department of Commerce or bureau or agency thereof acting under the instructions of the Secretary or authorized officer, to answer, to the best of his

tives had been unconstitutionally apportioned because apportionment between the states had not been adjusted in accord with the requirement of Section 2 of the Fourteenth Amendment. He also explained that inasmuch as the tabulation authorized by 13 U.S.C. § 141 of the total U. S. population by states was not accompanied with an authorized tabulation of the twenty-one year old male citizens of each state who had been denied the right to vote for the national and state officers listed in Amendment XIV, Section 2, the Act providing for the taking of the census was unconstitutional.

The enumerator departed. She returned a week later and was then informed that appellant "had not changed his mind in what he wanted to do." He persisted in his refusal to answer the questions, and in an affidavit voluntarily given by him he set forth his purpose and intent in so doing:

> "As a person who is deeply devoted to civil rights and the upholding of the Constitution of the United States, on April 6, 1960, I specifically and personally refused to answer the census enumerator, Mrs. Irene Miller, of Crompond Road, Croton-on-Hudson, New York, in order specifically to raise a constitutional case and controversy to determine whether the census law was constitutional * * *"

Appellant was indicted under 13 U.S. C. § 221(a) (1958) for refusing to answer the questions on the census form. At trial in the United States District Court for the Southern District of New York before a judge sitting without a jury, appellant asserted as his defense that the Census Act did not provide for a full constitutionally required enumeration, that that Act was being administered in a manner contrary to the United States Constitution, and that, therefore, he was not required to answer the questions on the 1960 census form. He asserted that the census enumerators should have asked each citizen, or at least each male citizen twenty-one years of age, whether he was being denied his right to vote and that, this question not being asked, proper figures could not be obtained to apportion constitutionally the National House of Representatives; and hence the census-taking deprived him of his federally guaranteed civil right to equal protection of the law and to be governed by a constitutionally elected Congress. Appellant was convicted and sentenced to pay a fine of $100.00. He promptly paid the fine and has appealed from his conviction.

■ Appellant, even though he has not been disfranchised, is a defendant who has been convicted of having refused to answer questions asked by a census-taker, and therefore he has the requisite standing to attack the constitutionality of the Census Act and its administration by the Census Bureau. His position is that, because of the alleged disfranchisement of citizens, the failure to reduce the Congressional representation of some states in the House of Representatives has unconstitutionally deprived citizens of other states, including appellant's state of New York, of proper proportionate representation in that House, and that this failure to follow the mandate of the U. S. Constitution has disfavored the voters in the latter states, "placing them in a position of constitutionally unjustifiable inequality vis-a-vis voters" [3] in those states where citizens are alleged to be disfranchised. Cf. Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).

■ Irrespective of the Fourteenth Amendment's mandate the Congress, in

---

knowledge, any of the questions on any schedule submitted to him in connection with any census or survey provided for by subchapters I, II, IV, and V of chapter 5 of this title, applying to himself or to the family to which he belongs or is related, or to the farm or farms of which he or his family is the occupant, shall be fined not more than $100 or imprisoned not more than sixty days, or both."

3. Brennan, J., in Baker v. Carr, 369 U.S. 186, 207, 82 S.Ct. 691, 705.

the present state of the law, is not required to prescribe that census-takers ascertain information relative to disfranchisement. Cf. United States v. Moriarity, 106 F. 886, 890–891 (S.D.N.Y.1901). The reduction of a state's representation in the House of Representatives as provided by Section 2 of the Fourteenth Amendment has been described as a "political question" of the kind that has been considered unsuitable for judicial determination. Saunders v. Wilkins, 152 F.2d 235 (4 Cir.1945), cert. denied, 328 U.S. 870, 66 S.Ct. 1362, 90 L.Ed. 1640 (1946). Whether this classification is to survive the recent decision of the Supreme Court in Baker v. Carr, supra, need not be determined by us in this case. The denial of the suffrage is a complex question, and it has been thought inappropriate to use census forms in order to obtain information relative thereto. 1 Ninth Census of the United States (1870) (report of the director of the 1870 census). We hold that there was nothing unconstitutional in the omission from the census form of a question relating to disfranchisement.

The judgment of conviction is affirmed.

LUMBARD, Chief Judge (concurring with opinion filed September 28, 1962).

Appellant, Victor Sharrow, was convicted of violating 13 U.S.C. § 221(a) (1958), which designates as criminal the refusal to answer questions included by the Secretary of Commerce in the census questionnaire which is provided for in 13 U.S.C. § 141 (1958) as follows:

"(a) The Secretary shall, in the year 1960 and every ten years thereafter, take a census of population, unemployment, and housing (including utilities and equipment) as of the first day of April, which shall be known as the census date.

"(b) The tabulation of total population by States as required for the apportionment of Representatives shall be completed within eight months of the census date and reported by the Secretary to the President of the United States."

Mr. Sharrow contends that his conviction should be reversed because the statute on which his prosecution was based is unconstitutional. He points out that the second section of the Fourteenth Amendment requires the reduction of the basis of representation in the House of Representatives for states to the extent that the right to vote is denied or abridged. He argues that Congress, in legislating with regard to the census—which is to be used to apportion representatives among the several states under Article I, section 2—is constitutionally obliged to direct the Secretary of Commerce to include in the census a question relating to the denial of the right to vote.

There is no language in the Constitution which directs that the Congress designate the census questionnaire as the means to determine disfranchisement. Although the 1960 census may have provided an occasion to make that factual determination, *but see* 1 Ninth Census of the United States (1870), it cannot be said to be the constitutionally required means. Nor does the failure of Congress to provide an alternative method to determine the facts necessary to enforce section 2 of the Fourteenth Amendment lead to the conclusion that the method suggested by Mr. Sharrow is commended by the Constitution. The actual means is within the discretion of Congress:

"The actual Enumeration shall be made * * * in such Manner as [the Congress] * * * shall by Law direct." U.S.Const. Art. I, § 2.

I agree with Judge WATERMAN that the statute under which Mr. Sharrow was convicted is constitutional. This is the only question we are called upon to discuss.