**Victor SHARROW, Plaintiff,**

**v.**

**George H. BROWN, Census Bureau Director, Department of Commerce, Defendant.**

**No. 70 Civ. 4769.**

United States District Court, S. D. New York.

Dec. 1, 1970.

———◆———

Victor Sharrow, pro se.

Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., New York City, for the United States; Joseph D. Danas, Asst. U. S. Atty., of counsel.

EDWARD WEINFELD, District Judge.

Plaintiff, a New York resident, moves for a temporary restraining order barring the defendant, the Director of the Census Bureau, from transmitting apportionment computations to the President of the United States that do not conform to the constitutional provisions of section 2 of the Fourteenth Amendment. Plaintiff also moves under 28 U. S.C., sections 2282 and 2284 for the convening of a three-judge court to pass upon his application for a permanent injunction and for summary judgment upon his claim to enjoin the Census Director from acting under the authority of 13 U.S.C. section 141(a) and (b) on the ground that this statute, which governs the manner of taking the census and the tabulation of total population by States

is unconstitutional for failure to comply with section 2 of the Fourteenth Amendment.

The plaintiff alleges that if the requested relief is not granted, he and other citizens similarly situated throughout the country will suffer irreparable injury in that they will be denied their right to constitutional apportionment of representatives and Presidential electors. The government urges dismissal of the complaint without the convening of a statutory court for lack of a substantial constitutional question on the basis of prior legislative and judicial decisions.

Plaintiff's claim is primarily hinged to section 2 of the Fourteenth Amendment, which provides:

"Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State, excluding Indians not taxed. But when the right to vote at any election for the choice of electors for President and Vice President of the United States, [and] Representatives in Congress · * * * is denied to any of the male inhabitants of such State, being twenty-one years of age, and citizens of the United States, or in any way abridged, except for participation in rebellion, or other crime, the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such State."

Also pertinent is article 1, section 2, paragraph 3, of the Constitution, which provides:

"Representatives * * * shall be apportioned among the several States

which may be included within this Union, according to their respective Numbers * * *. The actual Enumeration shall be made within three Years after the first Meeting of the Congress of the United States, and within every subsequent Term of ten Years, in such Manner as they [Congress] shall by Law direct."

And also pertinent is the constitutional provision relating to electors, article 2, section 1, clause 2, which provides:

"Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress; * * *."

The essence of the plaintiff's complaint is that the decennial census tabulation authorized by 13 U.S.C. section 141(b)[1] is repugnant to the mandate of section 2 of the Fourteenth Amendment, since it does not require a tabulation of twenty-one year old male citizens of each State who have been denied the right to vote. Plaintiff's claim of infringement of his right to constitutional apportionment of Representatives of the House and Presidential electors is based upon the fact that the census provides the basis for determining "the number of Representatives to which each State would ·be entitled * * * by the method known as the method of equal proportions."[2] The apportionment process is commenced by the President upon his receipt from the Census Director of the figures representing the total population broken down by States. The President transmits the information to the Congress, and the Clerk of the House of Representatives sends to the executive of each State a certificate showing the

---

1. "§ 141. *Population, unemployment, and housing*

"(a) The Secretary shall, in the year 1960 and every ten years thereafter, take a census of population, unemployment, and housing (including utilities and equipment) as of the first day of April, which shall be known as the census date.

"(b) The tabulation of total population by States as required for the apportionment of Representatives shall be completed within eight months of the census date and reported by the Secretary to the President of the United States."

2. 2 U.S.C. § 2a(a).

number of representatives to which the State is entitled. Thus, the census enumeration is of critical significance in deciding the number of representatives to which each State is entitled. Accordingly, plaintiff argues that if disenfranchised voters are not tabulated because section 141 of Title 13 does not require such tabulation, the States in which disenfranchised voters reside will be given disproportionate representation in relation to those States in which voters are not deprived of their right of franchise.

Plaintiff, to support his allegation that such malapportionment will occur if the 1970 census is used as the basis for apportioning representation in the House, has submitted a copy of a letter dated October 20, 1970, from the Census Director to plaintiff's Representative in the Congress, in which he states in part:

> "The report which the Secretary will transmit to the President of the United States on or before December 1, in accordance with Section 141(b) of Title 13, United States Code, will contain the tabulation of total population by States as required for the apportionment of Representatives. * * *

> *    *    *    *    *    *

> "Section 2 of the 14th Amendment was not used in 1960 and will not be used in 1970 in making these computations, inasmuch as the Congress has made no provision for implementing this Section." [3]

▬▬ Plaintiff is no stranger to the constitutional challenge levelled against the statutory census provision. In a civil suit commenced in 1960 in the District of Columbia, he attacked that year's census.[4] That action was dismissed. In addition, he was a defendant in a 1961 criminal prosecution in this District, and according to his affidavit he inspired a civil action brought by others in the District of Columbia in 1965,[5] both of which involved full consideration of the constitutional claims he now raises again. The rulings in those cases foreclose granting the preliminary injunctive relief here requested, and require denial of his motion to convene a three-judge court[6] and the dismissal of his complaint.

In United States v. Sharrow,[7] wherein plaintiff was convicted for refusing to answer questions on the 1960 census form, he sought reversal of his conviction on the same constitutional contentions as here advanced to secure injunctive relief. He asserted in defense of the criminal charge that section 2 of the Fourteenth Amendment required the reduction of the basis of representation for States to the extent that the right to vote is denied or abridged. He asserted then, as he does now, that 13 U.S.C., section 141, was unconstitutional insofar as it did not require a census tabulation of disenfranchised voters in the States. The harm then alleged by Sharrow, albeit as a defendant in the criminal prosecution, and now repeated here in his capacity as a civil plaintiff, was that the failure of the Census Bureau to ascertain and tabulate those citizens allegedly denied their voting rights unconstitutionally deprived him, other New York

---

3. Plaintiff also alleges that "New York is slated to lose its 6th or maybe even 7th Representative * * * because the mandatory reduction of the basis of representation will not be reduced [sic] where 21 year old male citizens are denied or abridged in their right to vote under '14/2'." No evidence has been submitted to support this statement.

4. Sharrow v. Eisenhower, 60 Civ. 3569 (D.D.C.1960).

5. Lampkin v. Connor, 239 F.Supp. 757 (D.D.C.1965), aff'd, 123 U.S.App.D.C. 371, 360 F.2d 505 (1966).

6. *See* California Water Service Co. v. City of Redding, 304 U.S. 252, 255, 58 S.Ct. 865, 82 L.Ed. 1323 (1938); Ex Parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933); Lewis v. Rockefeller, 431 F.2d 368 (2d Cir. 1970); Heaney v. Allen, 425 F.2d 869 (2d Cir. 1970).

7. 309 F.2d 77 (2d Cir. 1962), cert. denied, 372 U.S. 949, 83 S.Ct. 939, 9 L.Ed.2d 974, rehearing denied, 372 U.S. 982, 83 S.Ct. 1114, 10 L.Ed.2d 147 (1963).

State citizens and citizens of other States of their equal and proportionate representation in the House of Representatives. Plaintiff urged upon the Court of Appeals: "My State of New York and the citizens thereof, have been denied their full share of constitutional Representatives and Presidential Electors, diluting my full constitutional voting right, and denying me my full share of national political power as an individual." [8]

In affirming Sharrow's conviction on the merits, our Court of Appeals. Waterman (Cir. J.), held that:

> "Irrespective of the Fourteenth Amendment's mandate the Congress, in the present state of the law, is not required to prescribe that census-takers ascertain information relative to disfranchisement. Cf. United States v. Moriarity, 106 F. 886, 890–891 (S. D.N.Y.1901). * * * We hold that there was nothing unconstitutional in the omission from the census form of a question relating to disfranchisement." [9]

Chief Judge Lumbard, in his concurring opinion, stated at page 80:

> "There is no language in the Constitution which directs that the Congress designate the census questionnaire as the means to determine disfranchisement. * * * Nor does the failure

of Congress to provide an alternative method to determine the facts necessary to enforce section 2 of the Fourteenth Amendment lead to the conclusion that the method suggested by Mr. Sharrow is commended by the Constitution. The actual means is within the discretion of Congress: [citing Article 1, Section 2 of the United States Constitution]."

In Lampkin v. Connor,[10] the case which plaintiff states he inspired, an attack upon the constitutionality of the census statute was based on substantially the same argument here advanced. In that suit two different groups of plaintiffs sought a declaratory judgment requiring the defendants to compile figures at the next decennial census (1970, the one here attacked by plaintiff) as to denial and abridgement of the right to vote, and to transmit such figures to Congress for the apportionment of the House of Representatives. Alternatively, the plaintiffs sought, if it was determined that any statute required the preparation and transmittal of an apportionment in any other manner, that such statute be declared unconstitutional to the extent that it did not require defendants to comply with the provisions of section 2 of the Fourteenth Amndment.

The District Court held that the plaintiffs lacked standing to sue,[11] and alter-

---

8. Appellant's brief, p. 3.

9. 309 F.2d 77, 79–80 (2d Cir. 1962). While Judge Waterman stated in a dictum that he was not sure that "[t]he reduction of a state's representation in the House of Representatives as provided by Section 2 of the Fourteenth Amendment" would continue, in the light of Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), to be classified "as a 'political question' of the kind that has been considered unsuitable for judicial determination," 309 F.2d 77, 80 (2d Cir. 1962), the plaintiff is now unable to cite any subsequent case in support of his position, while the government can cite Lampkin v. Connor, 239 F.Supp. 757 (D. D.C.1965), aff'd, 123 U.S.App.D.C. 371, 360 F.2d 505 (1966). Furthermore, the dictates of Baker v. Carr and its progeny authorize the intrusion of the federal judiciary into matters of state government to prevent malapportionment, but this authority does not now extend to congressional prerogatives. See Avery v. Midland County, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1967); Wesberry v. Sanders, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964); Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); Lucas v. Forty-Fourth Gen'l Assembly of Colorado, 377 U.S. 713, 84 S.Ct. 1459, 12 L.Ed.2d 632 (1964).

10. 239 F.Supp. 757 (D.D.C.1965), aff'd, 123 U.S.App.D.C. 371, 360 F.2d 505 (1966).

11. It should be noted in passing that the standing doctrine may have changed sufficiently since the *Lampkin* decision so as no longer to constitute a bar to the plaintiff's suit. *See* Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947

natively decided that even if they had standing, their constitutional claims were without merit, and accordingly the Court would grant summary judgment against plaintiffs. The District Court rejected the plaintiffs' varied contentions and in part relied upon the ruling of our Court of Appeals in United States v. Sharrow, in effect holding that the failure of Congress to implement section 2 of the Fourteenth Amendment gave rise to no constitutional infirmity in the statute. Significantly, the Court of Appeals affirmed, but on a different ground. It held that as to both groups of plaintiffs the declaratory judgment action was inappropriate, since the alleged injury to each appeared remote and speculative, particularly since Congress, after the 1960 census, had "acted vigorously and comprehensively to remove the obstacles to voting of which the appellants complain. To regard its measures as having no effect upon the discriminations alleged by the Group II appellants, and derivatively relied upon by the Group I appellants, would not afford them the respect an Act of Congress deserves. Congress has established a plan of direct action for assuring to all citizens a non-discriminatory right to vote, and steps have been taken to implement these provisions." [12] And equally significant here, plaintiff has presented no evidential support for his claim of alleged continued disfranchise-

ment of voters in States; [13] nor has he shown that the voting acts passed by Congress up to the present have not ameliorated the alleged denial of voting rights.[14]

The motion for an injunction is denied, as is the motion for the convening of a three-judge court, and the complaint is dismissed.

---

(1967). On the other hand, the plaintiff might still be barred on the ground of his failure to meet the requirement set up by *Flast* to show "that the challenged enactment exceeds specific constitutional limitations imposed upon the exercise of the congressional  *  *  *  power."  392 U.S. 83, 102, 88 S.Ct. 1942, 1954 (1967). As the Court of Appeals pointed out in affirming the District Court in *Lampkin,* "apportionment is a duty which has been constitutionally entrusted to Congress, which has an unreviewable discretion as to how it is to be accomplished." 123 U.S. App.D.C. 371, 360 F.2d 505, 508 (1966).

12. 123 U.S.App.D.C. 371, 360 F.2d 505, 511 (1966). *See* Voting Rights Act, 42 U.S.C. § 1973 et seq. (1965), as amended,

Pub.L. No. 91–285, 84 Stat. 314 (June 22, 1970).

13. Judge Murphy, in denying the defendant's motion, made on the same constitutional argument as raised here, to dismiss the indictment in United States v. Sharrow, 61 Cr. 275 (S.D.N.Y.1961), also held that: "[W]e are compelled to deny the motion because of the absence of any proof that there is in fact disfranchisement.  *  *  *  It is a 'fact' that must be established by competent evidence, as all other facts must be." Record on Appeal, 309 F.2d 77 (2d Cir. 1962).

14. For evidence in support of a contrary view, *see* Hearings on H.R. 4249 Before Subcomm. No. 5 of the House Comm. on the Judiciary, 91st Cong., 1st Sess., at 181, 187 (1969).