PATRICK A. CADOGAN, administrator, *vs.* BOSTON CONSOLIDATED GAS COMPANY.

FRANK T. CADOGAN *vs.* SAME.

PHYLLIS G. CADOGAN *vs.* SAME.

Suffolk.    March 4, 1935. — April 30, 1935.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & QUA, JJ.

*Actionable Tort. Negligence*, Of vendor, Of gas company. *Notice.*

A gas company, which sold gas containing carbon monoxide to a householder in Boston, but which had nothing to do with the installation or maintenance of a gas hot water heater in the house, had no knowledge of the character of the heater and assumed no responsibility with respect thereto or the method of using gas therein, could reasonably assume that the householder would not need warning that the gas was dangerous to health and must not be allowed to escape from the heater and accumulate in the house, and therefore owed no duty

to the householder or other persons in the house to give such a warning, irrespective of whether the gas was an "inherently dangerous" article and even though the company knew that "there had been some cases in Boston of persons who had been overcome by carbon monoxide following the burning of the gas in hot water heaters."

A finding that a gas company had knowledge that a gas hot water heater in the house of one of its customers was not connected with the chimney and therefore might become a source of danger through gas escaping from it was not warranted on evidence showing merely that, upon complaint for failure of the supply of gas in the house, an employee of the company was sent there to clean out the service pipe to restore the flow of gas, and did so, incidentally testing the pressure in the heater and other appliances and inspecting the outlets to make sure that they were closed when he finished his work.

It *was stated* that, even if a gas company knew that a gas hot water heater in the house of one of its customers was not connected with the chimney, the company was not bound to anticipate that the heater would be used in a small room without any ventilation long enough to become dangerous through the escape of carbon monoxide therefrom.

THREE ACTIONS OF TORT, the first originally brought by Catherine J. Cadogan and after her death prosecuted by the administrator of her estate. Writs dated March 2, 1926.

The actions were tried together in the Superior Court before *Goldberg*, J. Material evidence is stated in the opinion. The judge denied a motion by the defendant in each action that a verdict be ordered in its favor. Subject to leave reserved, verdicts for the plaintiffs in the sums, respectively, of $5,500, $2,780, and $1,150 were recorded. Thereafter the judge denied a motion by the defendant in each action that a verdict be entered in its favor. The defendant alleged exceptions.

*L. C. Doyle*, (*John J. Sullivan* with him,) for the defendant.

*G. Alpert*, (*A. L. Brown* with him,) for the plaintiffs.

QUA, J. On March 29, 1923, Patrick A. Cadogan owned a house in Boston where he and his family lived. These actions were brought by his wife, since deceased, and his son and daughter to recover for personal injuries sustained by them on that day as a result of carbon monoxide poisoning.

The plaintiffs' evidence tended to show the following:

The kitchen in the house was about twelve feet wide, fifteen feet long and about nine to ten feet high.   In it were a gas stove, with a gas oven and open jets on top for cooking, and a gas hot water heater.   The heater was cylindrical in shape and contained a metal coil, in which the water ran and upon which the gas flame impinged to heat the water.   There was an opening at the top of this heater to which a flue could be attached to connect with a chimney, but none of the gas appliances was in fact connected with the chimney.   The day was very cold, and because of the coal strike, Cadogan had no coal to operate his furnace.   About 11:30 in the forenoon, the plaintiff Frank T. Cadogan lighted the gas oven, one of the open jets and the hot water heater.  In about half an hour Mrs. Cadogan came into the kitchen.  At some time the open jet was turned off, but was turned on again when Phyllis G. Cadogan came in about one o'clock.  All three remained in the kitchen.   The windows were all shut and the doors also, except when someone went through.  The heater and the oven continued to burn "on full," and the jet was still lighted.   The three persons in the room were found unconscious about four-thirty or five o'clock.  There was evidence from Phyllis that they became unconscious about quarter of two.   There was no noticeable odor.  The gas then furnished by the defendant contained between twenty-two and six tenths per cent and twenty-nine per cent of carbon monoxide.

An expert witness called by the plaintiffs testified that in his opinion the plaintiffs were injured by inhaling carbon monoxide from the water heater; that when the hot flame impinged upon the cooler coil it was so far chilled as to cause part of the monoxide to escape unconsumed; that carbon monoxide is a product of incomplete combustion of coal, wood, or any other carbonaceous material, though there is no carbon monoxide in them as an original content; that if there had been adequate ventilation there would have been no poisoning; and that if a door were open, causing circulation from the rest of the house, if the heater had a flue or if a window were opened, that would be adequate.

Patrick A. Cadogan owned all the gas appliances, and so far as appears, the defendant had nothing to do with their installation or maintenance, and except as hereinafter stated, had no knowledge as to what appliances were in the house.

Patrick, Frank and Phyllis all testified that they did not know and had not been informed by the defendant that the gas contained carbon monoxide or that it was dangerous under the conditions stated.

There was evidence that two days before March 29 there was no gas in the house, and on complaint a man came from the defendant and cleaned frost from the service pipe between the meter and the street main, after which he tested the pressure of all the appliances, including the hot water heater, and found it normal, inspected all gas jets to see if any were open and said it was "O. K. to use the gas now." This evidence was limited by the court to the issue whether the defendant should have foreseen that the hot water heater was likely to be used without proper ventilation.

The sole ground on which the plaintiffs contend they have a right to recover is that the defendant sold to Patrick A. Cadogan an inherently dangerous article, without notice to him or to the plaintiffs of its dangerous character under the existing conditions; that the plaintiffs were ignorant of the danger and that their injuries resulted from their use of the article in a manner which the defendant should have anticipated. It is sought to bring this case within that class of cases where recovery has been allowed by third persons against the seller under these circumstances. *Wellington* v. *Downer Kerosene Oil Co.* 104 Mass. 64. *Thornhill* v. *Carpenter-Morton Co.* 220 Mass. 593. *Guinan* v. *Famous Players-Lasky Corp.* 267 Mass. 501. *Farley* v. *Edward E. Tower Co.* 271 Mass. 230.

We have no disposition to restrict the scope of the principles on which these cases rest in so far as they are properly applicable to new situations which may arise. But we are of opinion that they do not apply here. In the law of torts there is, in general, no duty to warn unless the per-

son on whom the duty would be cast has some reason to suppose that a warning is needed. *Guinan* v. *Famous Players-Lasky Corp.* 267 Mass. 501, 513. We think that at this late day the defendant could reasonably assume that a householder in Boston was sufficiently familiar with the kind of illuminating gas used in this part of the country to know that it was dangerous to health, that it must not be allowed to escape and that it must be consumed in such manner as to avoid the accumulation in the house of toxic gases. It is common experience that householders are capable of using safely the gas which is supplied them through their service pipes. Where the company supplying the gas has undertaken no responsibility with respect to the appliances within the house or the method of using the gas in them (compare *Kelly* v. *Pittsfield Coal Gas Co.* 257 Mass. 441) we think that, in the absence of peculiar circumstances, there is no duty on its part to warn the consumer with whom it deals, and so no duty to warn third persons, of the dangers attendant upon the burning of gas. This view has been taken by other courts when the question has arisen. *Smith* v. *Pawtucket Gas Co.* 24 R. I. 292, 295. *Triplett* v. *Alabama Power Co.* 213 Ala. 190. *Clare* v. *Bond County Gas Co.* 356 Ill. 241. *Ocean Accident & Guarantee Corp. Ltd.* v. *Schachner*, 70 Fed. Rep. (2d) 28, 32. See *Pitman* v. *Lynn Gas & Electric Co.* 241 Mass. 322; *Gobrecht* v. *Beckwith*, 82 N. H. 415. We think this is true even though the company had knowledge that "there had been some cases in Boston of persons who had been overcome by carbon monoxide following the burning of the gas in hot water heaters."

But the plaintiffs further contend that the defendant, through the man whom it sent to the house, had knowledge that this particular heater was not connected with the flue and therefore might become a source of danger, and that this knowledge imposed a duty to warn. We find no evidence that the man was authorized to do more than to clean out the service pipe so as to restore the flow of gas and incidentally to see that the outlets were closed when the gas began to flow again. There is no evidence that he

was sent to examine or to inspect the customer's appliances or to pass upon their construction or safety or that he knew that the absence of a flue connection might be a source of danger, if in fact he observed that there was no such connection.   In *Triplett* v. *Alabama Power Co.* 213 Ala. 190, it was held upon very similar evidence that the company was not chargeable with notice.   Even if this were not so, we should hesitate to say that the company could be held bound to anticipate that the unconnected water heater would be used continuously in a small room without any ventilation whatever long enough to become dangerous.

In each of the three cases the exceptions must be sustained, and judgment entered for the defendant under G. L. (Ter. Ed.) c. 231, § 122.

*So ordered.*