**HUBBARD–HALL CHEMICAL COMPANY, Defendant-Appellant,**

v.

**Charles L. SILVERMAN, Administrator, et al., Plaintiffs-Appellees.**

No. 6398.

United States Court of Appeals
First Circuit.

Jan. 25, 1965.

Paul R. Frederick, Boston, Mass., with whom Badger, Parrish, Sullivan & Frederick, Boston, Mass., was on brief, for appellant.

Melvin S. Louison, Taunton, Mass., with whom Walter J. Hurley, Boston, Mass., was on brief, for appellees.

Before ALDRICH, Chief Judge, and SWEENEY and WYZANSKI, District Judges.

WYZANSKI, District Judge.

In this personal injury case brought within the diversity jurisdiction of the United States District Court, the chief issue is whether there was sufficient evidence of the alleged negligence of the defendant manufacturer of insecticides to permit a jury to hold it liable for the death of two decedents of whose estates plaintiffs are administrators.

On the view of the evidence most favorable to plaintiffs, who are seeking to sustain jury verdicts returned in their favor, these are what a jury could reasonably have found to be the facts.

Defendant is a manufacturer and seller of 1.5% Parathion dust. Defendant labeled its product, because of its poisonous character, as follows:

"CAUTION: May Be Fatal If Swallowed, Inhaled or Absorbed Through Skin. Rapidly Absorbed Through Skin. Do not get in eyes or on skin. Wear natural rubber gloves, protective clothing and goggles. In case of contact wash immediately with soap and water. Wear a mask or respirator of a type passed by the U.S. Department of Agriculture for parathion protection. Keep all unprotected persons out of operating areas or vicinity where there may be danger of drift. Vacated areas should not be re-entered until drifting insecticide and volatile residues have dissipated. Do not contaminate feed and foodstuffs. Wash hands, arms and face thoroughly with soap and water before eating or smoking. Wash all contaminated clothing with soap and hot water before re-use."

In 1957 defendant forwarded to the U.S. Department of Agriculture its application, under the Federal Insecticide, Fungicide, and Rodenticide Act, [codified in 7 U.S.C. ch. 6 §§ 135 through 135k] for registration of 1.5% Parathion dust, and annexed a copy of the above-quoted label. May 20, 1957 the Department granted registration with the understanding that in the label "the word 'WARNING' should be substituted for the heading word 'CAUTION'."

Defendant sold bags of this Parathion dust to Viveiros, the operator of a farm in Taunton, Massachusetts. He employed plaintiffs' intestates. Both of the employees were natives of Puerto Rico. One could read some English; the other could not read any. As of August 1959, the former had been for one year, the latter for two years, in Viveiros' employ. During their employment, they, in their capacity as laborers and farm hands, had often used various chemicals for dusting and spraying. They had dusted with Parathion on several occasions, and in-

deed four times in the week ending August 14, 1959.

Viveiros, knowing the dangerous character of Parathion and the other insecticides used on his farm, kept available for his employees gas masks, rubber raincoats, and rubber boots. Viveiros says he told the intestates and his other laborers that the chemicals including Parathion were dangerous, and that if they did not use the masks and coats and follow instructions they were likely to die. But it is to be borne in mind that plaintiffs' intestates, being dead, were unable to confirm or deny those statements; and the statements themselves came from a person who was, in the lower court, one of the parties defendant against plaintiffs' claims.

August 14, 1959 the intestates went to work dusting with Parathion. At 9:15 A.M. Viveiros observed them without masks or coats; but they were then resting and eating. After a full day of dusting, both intestates were sick. After 6 P.M. they were taken in a semi-comatose condition to a hospital. They died almost immediately after arrival. There was adequate evidence that in each case the cause of death was the effect upon them of having used Parathion in dusting operations on the Viveiros farm on the day of their death.

In his characteristically explicit charge to the jury, Judge Ford drew to their attention that each plaintiff had alleged that defendant "was negligent in failing to properly, openly and conspicuously label its said parathion products so as to sufficiently warn anyone supplying or using parathion of the inherent danger in its use." The judge then noted that a manufacturer "who supplies * * * a product for another to use is subject to liability to those whom the supplier would expect to use the product, for bodily harm caused by "the use of the product in a manner for which and by a person for whose use it is supplied, if the manufacturer: (a) knows from the facts supplied to him that the chattel, the product, is likely to be dangerous for the use for which it is supplied; (b) has no reason to believe that those for whose use the product is supplied will realize its dangerous condition; and (c) fails to exercise, commensurate with the risk involved, reasonable care to inform them by adequate instructions or warnings of its dangerous condition."

"An adequate warning, members of the jury, is one calculated to bring home to a reasonably prudent person, a reasonably prudent user of the product, the nature and extent of the danger of the product involved."

Then, having reminded the jury that he was commenting on the evidence "only in an advisory capacity", Judge Ford drew to the jury's attention the cautionary label defendant had affixed ·to its product, informed them that if defendant had substantially complied "with the requirements of the Federal Insecticide Act * * * it is some evidence that * * * they exercised reasonable care", reminded them that plaintiff's counsel had suggested "that there should be a skull and crossbones on the warning", and then (certainly well within his rights as a trial judge, but nonetheless making fairly clear his personal position on the issue of liability) asked the jury the question whether defendant "should * * *, for example, put a coffin on the notice?"

Thereafter Judge Ford charged the jury with respect to issues of contributory negligence. In the course of so doing he told them: "You could find members of the jury, and I do not say you should but you could find it to be contributory negligence if you find that a user, here the deceased, of an inherently dangerous product such as parathion were adequately warned of the risk involved in its use and provided with adequate protection, failed to use the protection against its dangers and the failure to use the protection was the proximate cause of their injuries."

Responding to Judge Ford's accurate and admirable instructions of law, but declining to follow the rather broad hints in the judge's advisory comments on the evidence, (and undoubtedly not appreciating the probable reason why Judge

Ford, instead of taking general verdicts, laid before the jury special questions,) the jury, in its special verdicts, answered "no" to each of the following interrogatories:

"1. Did the defendant Hubbard-Hall Chemical Company exercise reasonable care in giving the deceased Velez-Velez and Ramos-Sanchez adequate warning of the dangerous nature of Parathion and instructions as to its use?"

"2. Did either Manuel Velez-Velez or Jaime Ramos-Sanches fail under the circumstances to exercise the care of an ordinarily prudent person in the use of the Parathion?"

The jury also assessed damages; and on the special verdicts as a whole, Judge Ford entered judgments for plaintiffs, from which defendant has appealed.

The appeals must be dismissed.

■ We are of opinion that the jury could reasonably have believed that defendant should have foreseen that its admittedly dangerous product would be used by, among others, persons like plaintiffs' intestates, who were farm laborers, of limited education and reading ability, and that a warning even if it were in the precise form of the label submitted to the Department of Agriculture would not, because of its lack of a skull and bones or other comparable symbols or hieroglyphics, be "adequate instructions or warnings of its [Parathion's] dangerous condition."

The approval of the label given by the Department of Agriculture merely satisfied the conditions laid down by Congress for the shipment of the product in interstate commerce. Neither Congress nor the Department explicitly or implicitly provided that the Department's approval of the label carried with it as a corollary the proposition that defendant had met the possibly higher standard of due care imposed by the common law of torts applied under the local state law of Massachusetts in actions of tort for negligence. Cf. Spruill v. Boyle-Midway, 4th Cir., 309 F.2d 79; Tampa Drug Co. v. Wait, (Fla.), 103 So.2d 603. Nor is it argued that in enacting the Federal Insecticide, Fungicide, and Rodenticide Act, Congress had occupied the whole field of civil liability between private parties in tort actions founded on negligence, so that federal rules of law governed such actions and, by virtue of the supremacy clause of U.S. Constitution Article VI, ousted state law from its normal area of coverage. Indeed all counsel at our bar assumed, as we do, the contrary; that is, we have all proceeded on the premise that, defendant's product having had its impact in Massachusetts upon plaintiffs' intestates, the governing law is the local common law of this Commonwealth.

■■ Even if it be assumed that contributory negligence is an available defense in an action premised on the alleged breach of a duty to warn the plaintiff, [a point not free from doubt, See Dillard and Hart, Product Liability: Directions for Use and the Duty to Warn, 41 Virginia L.R. 145, 177–178 (1955),] it cannot be ruled as a matter of law that on the evidence in this case defendant, beyond effective challenge, maintained its burden of proving that plaintiffs' intestates were contributorily negligent in not having used masks and raincoats. Defendant had the burden of convincing the jury that the intestates had received oral adequate warnings from Viveiros. To be sure, he said he gave such warnings. But he was an interested party. The jury may not have credited his testimony. If they did not, then defendant failed to bear its burden of proving contributory negligence.

While Judge Ford seems to have thought that defendant deserved to prevail, he in the exercise of a sound judicial discretion, did not choose to exercise his prerogative to set aside the verdicts as against the weight of the evidence. We cannot upset the judgments entered thereon on the alleged ground of want of sufficient evidence to sustain them.

Judgment will be entered affirming the judgment of the District Court.

ALDRICH, Chief Judge (concurring).

I concur in the court's opinion in substantial measure, but with one caveat. Strictly, I do not think the question need be one of contributory negligence. If a party has a duty to warn, and fails adequately to perform, as could be found here, it may nonetheless be that the other party in fact possessed the knowledge which a proper exercise of the duty would have conveyed. In such event there can be no recovery. New York Central R.R. v. Moynihan, 1 Cir., 1964, 338 F.2d 644. A plaintiff might, in fact, have understood the notice given by the defendant in spite of its inadequacy, or might have received sufficient warning from other sources. However, the burden of proof should be upon the defendant to show that the plaintiff did have such knowledge. The very reason that the law imposes a duty to give notice in a particular case is the assumption that, because of the danger not commonly known to users, "a warning is needed." See Cadogan v. Boston Consolidated Gas Co., 1935, 290 Mass. 496, 500, 195 N.E. 772. That the plaintiff fell outside the common class should be the defendant's burden, not the plaintiff's.

While the Massachusetts cases do not appear to have dealt explicitly with the burden of proof in this situation, I do observe that in Thornhill v. Carpenter-Morton Co., 1915, 220 Mass. 593, 108 N.E. 474, in permitting recovery for failure to warn of the dangerous characteristics of a product, the court remarked, at p. 598, 108 N.E. at p. 492 that the plaintiff "is not shown to have had" the information which the defendant had failed to disclose. This must have meant not shown by the defendant.

This difference in principle leads to no difference in result. Even if the test for contributory negligence might, in some instances, be more severe than simply whether a user in fact possessed the knowledge which a proper notice from the defendant would have given him, the court here put to the jury a special question inquiring whether each intestate assumed the risk of injury. In its charge it explained that this meant whether intestates knew "the facts which created the danger * * * and appreciated the risk of personal injury that was involved in such facts." The jury answered in the negative as to each.

The jury has found that the defendant did not use an adequate form of warning. It has found that the intestates did not in fact receive warning. The defendant has no present complaint.