**CHEMICAL SPECIALTIES MANUFACTURERS ASSOCIATION, INC., Plaintiff-Appellant,**

**v.**

**Robert O. LOWERY, Fire Commissioner, City of New York, and the City of New York, a Municipal Corporation, Defendants-Appellees.**

**No. 1024, Docket 71-1316.**

United States Court of Appeals, Second Circuit.

Argued July 14, 1971.

Decided Nov. 10, 1971.

Oakes, Circuit Judge, dissented and filed opinion.

Robert L. Ackerly, Washington, D. C. (Sellers, Connor & Cuneo, Washington, D. C., and Thomas R. Farrell, Gold, Farrell & Marks, New York City, of counsel), for plaintiff-appellant.

Jesse I. Levine, New York City (J. Lee Rankin, Corp. Counsel, New York City, Stanley Buchsbaum, New York City, of counsel), for defendants-appellees.

Before FRIENDLY, Chief Judge, and LUMBARD and OAKES, Circuit Judges.

FRIENDLY, Chief Judge:

In 1963, the Commissioner of the Fire Department of the City of New York first published a proposed set of detailed regulations dealing with pressurized containers, or so-called "aerosols." [1] A new version of the proposed regulations (hereafter the City Regulations) concerning primarily the classification and labeling of pressurized products was published on January 31, 1971, to be effective July 31, 1971.[2] Chemical Specialties Manufacturers Association, Inc. (hereafter CSMA), having failed in its efforts to obtain review of the proposed City Regulations in the Board of Standards and Appeals of the City of New

1. The terms "aerosol" and pressurized container are apparently used interchangeably. Commercial ingredients such as insecticides, hair sprays, cleaning fluids, shoe polishes, and many others are packaged in a container together with a gas propellant. When the valve on the container is depressed, a mist consisting of a mixture of the components is expelled. The commercial substance or the propellant or both may be flammable. Fluorocarbon gases which are considered to be non-flammable and hydrocarbon gases which are considered to be flammable are frequently used in combination as a propellant. As a result, use of a pressurized container in conjunction with heat may have a blowtorch effect. Moreover, regardless of the flammability of the components, pressurized containers always have an explosive potential if subjected to heat.

2. Further alterations were made in the proposed City Regulations following their publication in January.

York,[3] filed this action in the District Court for the Southern District of New York seeking declaratory and injunctive relief against the City Regulations. CSMA is a non-profit membership corporation composed of approximately 500 suppliers, packagers, and marketers of pressurized products. The essence of its complaint was that in a variety of respects the City Regulations were in impermissible conflict with the Federal Hazardous Substances Act, 15 U.S.C. § 1261 et seq. (hereafter the FHSA), and the Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. § 135 et seq. (hereafter the FIFRA), and that Congress had fully occupied the field of regulating the testing and labeling of pressurized products subject to those federal laws. The district court concluded that it "should abstain from exercising jurisdiction and leave the plaintiff and its alleged members to the appropriate and competent State courts in which they may assert all legal defenses available to them. . . ." It therefore denied an injunction *pendente lite* and dismissed the complaint.

We cannot accept the district court's suggestion that this is an appropriate case for invoking the doctrine of abstention. The Supreme Court has recently observed that the "abstention cases have dealt with unresolved questions of state law which only a state tribunal could authoritatively construe." Wisconsin v. Constantineau, 400 U.S. 433, 438, 91 S.Ct. 507, 511, 27 L.Ed.2d 515 (1971) (citation omitted). Here there is no uncertainty with respect to the City Regulations that would call for construction by the state courts in the first instance. As will be seen, such difficulties in statutory construction as exist pertain rather to the relevant federal laws, and a federal court is better equipped to deal with these. Indeed, abstention is peculiarly inappropriate when the federal claim is that the state has been ousted from jurisdiction. Once the abstention question is out of the way, it is clear that CSMA had standing to seek judicial review on behalf of its members, see, e. g., Scenic Hudson Preservation Conference v. FPC, 354 F.2d 608, 615–617 (2 Cir. 1965), cert. denied, 384 U.S. 941, 86 S.Ct. 1462, 16 L.Ed.2d 540 (1966), and that the district court had jurisdiction to entertain this preenforcement proceeding, see Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S. Ct. 1507, 18 L.Ed.2d 681 (1967); Gardner v. Toilet Goods Ass'n, 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967).

Turning to the merits, we begin by noting that the Supreme Court has instructed that "federal regulation of a field of commerce should not be deemed preemptive of state regulatory power in the absence of persuasive reasons . . .", Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963), and that, in order for a federal act to preempt state regulation, it must be established that "either the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakenly so ordained." *Id.* However, even under this test, CSMA has raised sufficiently substantial questions to warrant factual determination after a trial.

The heart of the City Regulations is the detailed requirements concerning the testing and labeling as to flammability of all pressurized containers stored, sold, or used in the City of New York; in accordance with these provisions containers may be required to be labeled "extremely flammable," "flammable," or "combustible."[4] In addition, the City

3. Its appeal was rejected by the Board on the apparent ground that CSMA did not itself manufacture any pressurized product which had been deemed to be in violation of any specific provision of the City Regulations by an administrative officer of the Fire Department of the City of New York.

4. Section 5. Labeling Requirements:
A. Cautionary labeling requirements shall provide for three categories based

Regulations require similar cautionary labeling with respect to storage fire hazards on all cartons, cases, or other bulk packages of pressurized products, see § 5(A) (2), and prescribe the manner in which bulk quantities of a pressurized product must be stored depending upon its degree of flammability see § 6. Container materials, § 3, limitations on container capacity, § 4, as well as complete bans on certain types of pressurized products, § 8, are also specified. Finally, the manufacturer, agent, or distributor must secure a Certificate of Approval, § 1(E), or a Permit, § 1(F), from the Fire Department of the City of New York before storing, selling, or using a pressurized product in the City of New York, see §§ 1 & 7, and the number of the Certificate of Permit, together with the name and address of the registered manufacturer, agent, or distributor, must appear, among other places, on each container of a pressurized product, see § 5(B).[5]

The FHSA, 15 U.S.C. § 1261, provides in part:

> (f) The term "hazardous substance" means:
>
> (1) (A) Any substance or mixture of substances which (i) is toxic, (ii) is corrosive, (iii) is an irritant, (iv) is a strong sensitizer, (v) is flammable or combustible, or (vi) generates pressure through decomposition, heat, or other means, if such substances or mixture of substances may cause substantial personal injury or substantial illness during or as a proximate result of any customary or reasonably foreseeable handling or use, including reasonably foreseeable ingestion by children.

Certain pressurized products obviously fall within this definition and accordingly the provisions of the federal statute on testing and labeling[6] apply to them,

on primary consumer hazard, storage hazards, and household products under the jurisdiction of the Federal Hazardous Substances Act.

(1) Cautionary Consumer Labeling

A warning indicating the degree of any consumer fire hazard found to exist by application of the Flame Projection Test method as stated in Section 2 shall appear either on the front panel or immediately above the directions for use as follows:

a. For EXTREMELY FLAMMABLE Products

DANGER—EXTREMELY FLAMMABLE
KEEP FROM HEAT OR FLAME *

b. For FLAMMABLE Products

WARNING—FLAMMABLE
KEEP FROM HEAT OR FLAME *

c. For COMBUSTIBLE Products

CAUTION—COMBUSTIBLE
KEEP FROM HEAT OR FLAME *

* Note: "DO NOT USE NEAR FIRE OR FLAME" or "DO NOT SPRAY NEAR FLAME" may be used as alternates.

Section 2 of the City Regulations details testing procedures to be used in classifying pressurized products.

5. Identification Labeling:

All pressurized containers coming within the classification as contained herein shall bear the following identification labeling:*

(1) Name and address of Manufacturer, Agent or Distributor listed or authorized in the New York Fire Department Certificate of Approval (or Permit to Manufacture) issued for the product.

(2) The New York Fire Department Certificate of Approval No. (or Permit No.). This shall also appear on the carton, case or similar bulk package.

* Note: Such identification labeling may appear anywhere on the container and need not be in the size or color specified for cautionary labeling.

6. The term "extremely flammable" shall apply to any substance which has a flash point at or below twenty degrees Fahrenheit as determined by the Tagliabue Open Cup Tester, the term "flammable" shall apply to any substance which has a flash point of above twenty degrees to and including eighty degrees Fahrenheit, as determined by the Tagliabue Open Cup Tester, and the term "combustible" shall apply to any substance which has a flash point above eighty degrees Fahrenheit to and including one hundred and fifty degrees, as determined by the Tagliabue Open Cup Tester; except that the flammability or combustibility of solids and of the contents of self-pressurized containers shall be determined by methods found by the

as do the regulations thereunder which have been adopted by the Food and Drug Administration.[7] With respect to the regulation of products within the FHSA,

Secretary to be generally applicable to such materials or containers, respectively, and established by regulations issued by him, which regulations shall also define the terms "flammable," "combustible," and "extremely flammable" in accord with such methods.

15 U.S.C. § 1261(*l*).

The term "misbranded hazardous substance" means a hazardous substance (including a toy, or other article intended for use by children, which is a hazardous substance, or which bears or contains a hazardous substance in such manner as to be susceptible of access by a child to whom such toy or other article is entrusted) intended, or packaged in a form suitable, for use in the household or by children, if the packaging or labeling of such substance is in violation of an applicable regulation . . . except as otherwise provided by or pursuant to section 1262 of this title, fails to bear a label—

(1) which states conspicuously (A) the name and place of business of the manufacturer, packer, distributor or seller; (B) the common or usual name or the chemical name (if there be no common or usual name) of the hazardous substance or of each component which contributes substantially to its hazard, unless the Secretary by regulation permits or requires the use of a recognized generic name; (C) the signal word "DANGER" on substances which are extremely flammable, corrosive, or highly toxic; (D) the signal word "WARNING" or "CAUTION" on all other hazardous substances; (E) an affirmative statement of the principle hazard or hazards, such as "Flammable", "Combustible", "Vapor Harmful", "Causes Burns", "Absorbed Through Skin", or similar wording descriptive of the hazard; (F) precautionary measures describing the action to be followed or avoided, except when modified by regulation of the Secretary pursuant to section 1262 of this title; (G) instruction, when necessary or appropriate, for first-aid treatment; (H) the word "poison" for any hazardous substance which is defined as "highly toxic" by subsection (h) of this section; (I) instructions for handling and storage of packages which require special care in handling or storage; and (J) the statement (i) "Keep out of the reach of children" or its practical equivalent, or, (ii) if the article is intended for use by children and is not a banned hazardous substance, adequate directions for the protection of children from the hazard.

15 U.S.C. § 1261(p).

7. Self-pressurized containers; labeling.

(a) Self-pressurized containers that fail to bear a warning statement adequate for the protection of the public health and safety may be misbranded under the act, except for as otherwise provided pursuant to section 3 of the Act.

(b) The following warning statement will be considered as meeting the requirements of section 2(p) (1) of the act if the only hazard associated with an article is that the contents are under pressure:

WARNING—CONTENTS UNDER PRESSURE

Do not puncture or incinerate container. Do not expose to heat or store at temperature above 120° F. Keep out of the reach of children.

The word "CAUTION" may be substituted for the word "WARNING". A practical equivalent may be substituted for the statement. "Keep out of the reach of children."

(c) That portion of the warning statement set forth in paragraph (b) in capital letters should be printed on the main (front) panel of the container in capital letters of the type size specified in § 191.101(c). The balance of the cautionary statements may appear together on another panel: Provided, That the front panel also bears a statement such as "Read carefully other cautions on . . . . panel."

(d) If an article has additional hazards, such as skin or eye irritancy, toxicity, or flammability, appropriate additional front and rear panel precautionary labeling is required.

21 C.F.R. § 191.110.

Method for determining extremely flammable and flammable contents of self-pressurized containers.

(a) *Equipment required.* The test equipment consists of a base 8 inches wide, 2 feet long, marked in 6-inch intervals. A rule 2 feet long and marked in inches is supported horizontally on the side of the base and about 6 inches above it. A paraffin candle 1 inch or more in diameter, and of such height that the top third of the flame is at the height of the horizontal rule, is placed at the zero point in the base.

(b) *Procedure.* The test is conducted in a draft-free area that can be ventilated and cleared after each test. Place

Congress in 1966 took the rather unusual step of enacting the following express preemption provision:

> It is hereby expressly declared that it is the intent of the Congress to supersede any and all laws of the States and political subdivisions thereof insofar as they may now or hereafter provide for the precautionary labeling of any substance or article intended or suitable for household use . . . which differs from the requirements or exemptions of this Act or the regulations or interpretations promulgated pursuant thereto. Any law, regulations, or ordinance purporting to establish such a labeling requirement shall be null and void.

15 U.S.C.A. § 1261 note (b). In light of this, the City Regulations provide that any pressurized product within the FHSA is to be tested and labeled as to flammability in accordance with the provisions of the latter, see § 5(A) (3).[8] Nevertheless, even those pressurized products within the FHSA must be labeled with a New York City Fire Department Certificate or Permit number together with the name and address of the registered manufacturer, agent, or distributor, see § 5(B).

CSMA's complaint charges that section 5(B) constitutes an impermissible local labeling requirement in light of the express preemption provision contained in the FHSA. Against this, the dissent suggests that the identification labeling requirement is merely additive; there is no evident conflict between it and the requirements of the FHSA. Indeed, in part, this local labeling requirement is not merely additive but redundant, for the FHSA requires that any

> the self-pressurized container at a distance of 6 inches from the flame source. Spray for periods of 15 seconds to 20 seconds (one observer noting the extension of the flame and the other operating the container) through the top third of the flame and at a right angle to the flame. The height of the flame should be approximately 2 inches. Take three readings for each test, and average. As a precaution do not spray large quantities in a small, confined space. Free space of previously discharged material.
>
> Method for determining flashpoint of extremely flammable contents of self-pressurized containers.
>
> The apparatus used is the Tagliabue Open-Cup Flashpoint Apparatus as described in § 191.13. Some means such as dry ice in an open container is used to chill the pressurized container. The container, the flash cup, and the bath solution of the apparatus (brine or glycol may be used) are chilled to a temperature of about 25° F. below zero. The chilled container is punctured to exhaust the propellant. The chilled formulation is transferred to the test apparatus and tested in accordance with the method described in § 191.13.

21 C.F.R. §§ 191.15 & 191.16.

8. Cautionary Labeling of Household Products Under Jurisdiction of Federal Hazardous Substance Act **

> Such cautionary labeling of the individual consumer package and the cartons, cases or similar bulk package shall be in accordance with the test methods and labeling requirements as specified under the Federal Hazardous Substance Act (Public Laws 86–613 and 89–756, U.S.Code Title 15) and regulations adopted pursuants [*sic*] to that act (Part 191, Title 21, Code of Federal Regulations) in lieu of that specified in Section 6A(1), (2), (4), and (5).
>
> ** Note: This classification of these pressurized products regulations excludes certain products falling under the jurisdiction of the present Federal Food, Drug & Cosmetic Act, the Federal Insecticide, Fungicide and Rodenticide Act, the Atomic Energy Commission, the Public Health Service Act, and to fuels used in the heating, cooking or refrigeration systems of a house.

In addition, section 2(E) of the City Regulations provides in part:

> For household products within the purview of the Federal Hazardous Substance Act, test procedures as described herein shall be performed for the purpose of classification relative to container size, container construction, prohibitions, and necessity for N.Y.F.D. Certificates of Approval (or permit to manufacture). Test procedures relative to classification for labelling for such products shall be performed as specified in Section 5A(3) herein.

container of a hazardous substance suitable for household use state, among other things, "the name and place of business of the manufacturer, packer, distributor or seller," 15 U.S.C. § 1261 (p) (1) (A). Thus, only the requirement that the container display the New York City Fire Department Certificate or Permit number is additive.

At first blush such a requirement does not seem onerous; manufacturers or distributors would only need to stamp the New York number on each pressurized container before storing, selling, or using the product in the City of New York. However, apparently it would be necessary either to segregate a certain number of containers at the point of manufacture, specially marking and routing them for the City of New York, or else to unpack and mark all containers immediately upon arrival in the City. One need only contemplate that many other major cities might establish for pressurized products similar registration provisions bolstered with an identification labeling requirement to realize that the burden thus placed on interstate commerce may be by no means trivial.

Despite this, such a requirement would presumably be valid if CSMA's case rested on the Commerce Clause alone or on a federal statute without a preemption clause. See Patapsco Guano Co. v. Board of Agriculture, 171 U.S. 345, 18 S.Ct. 862, 43 L.Ed. 191 (1898); Savage v. Jones, 225 U.S. 501, 32 S.Ct. 715, 56 L.Ed. 1182 (1912); Swift & Co. v. Wickham, 230 F. Supp. 398, 401–403 (S.D.N.Y.1964) aff'd, 364 F.2d 341 (2 Cir. 1966), cert. denied, 385 U.S. 1036, 87 S.Ct. 776, 17 L.Ed.2d 683 (1967). But here we have not merely a federal labeling statute but an express statement of congressional intent to supersede state and local labeling requirements with respect to products within the FHSA. As the writer has previously said, "[t]he very existence of an express preemption clause is somewhat unusual," Chrysler Corp. v. Tofany, 419 F.2d 499, 512 (2 Cir. 1969) (concurring opinion); it should not be taken casually. We must therefore explore the meaning of this provision and its legislative history with care.

In this regard, we note the use of the phrase "precautionary labeling" in the preemption provision and the reference to this provision in the House Report as a "limited preemption amendment." H.R.Rep. No. 2166, 89th Cong., 2d Sess. (1966). In giving meaning to this latter phrase, the legislative history *subsequently* explains that this "limited preemption amendment relates only to labeling and would not preclude States or localities from prohibiting altogether an article * * * which would not be banned under the Federal act if properly labeled." While Congress thus made clear that it was not preempting local regulation with respect to matters other than labeling, it is also evident that Congress intended to preempt all local regulations with respect to the labeling of products within the FHSA:

> It is impracticable, unnecessary, and undesirable for each [household] product [sold nationally and across state lines] to be labeled specially for those States and cities which have developed their own standards for requiring warnings and their own special forms of warnings over the years during which there was no Federal law. The committee now recommends a limited preemption amendment which would encourage and permit States to adopt requirements identical with the Federal requirements for substances subject to the Federal act, and to enforce them to complement Federal enforcement, *but at the same time would free marketers of products sold interstate from varying or added labeling requirements for such substances now existing or which States and cities might otherwise adopt in the future.*

H.R.Rep. No. 2166, 89th Cong., 2d Sess. (1966) (emphasis supplied). U.S.Code Cong. & Admin.News, p. 4097. Any restricted reading of "precautionary labeling" not to include such additional labeling as is required under the City Regulations would implicitly suggest that

Congress was not concerned with the burdening of interstate commerce, a position clearly refuted by this legislative history; the flow of commerce in products within the FHSA free of differing labeling requirements was clearly of foremost concern to Congress in enacting the preemption provision. Such a concern would not be served by restricting the express preemption provision to cautionary labeling and sanctioning a proliferation of local requirements with respect to identification labeling.[9] Compare Campbell v. Hussey, 368 U.S. 297, 82 S.Ct. 327, 7 L.Ed.2d 299 (1961). In sum, the evidence is strong that Congress used the phrase "precautionary labeling" in the preemption provision in the broad sense of all labeling of hazardous substances covered by the FHSA.

Thus, this case differs markedly from our decision in Chrysler Corp. v. Tofany, *supra.* Putting aside the fact that in *Tofany* we had the benefit of a fully developed record and the views of a number of district judges, the majority there concluded on the basis of rather convoluted legislative history that the overriding purpose of the National Traffic and Motor Vehicle Safety Act, 15 U.S.C. § 1381 et seq., which contained an express preemption provision, was the reduction of traffic accidents, not uniformity of regulation, and analyzed the case accordingly, see 419 F.2d at 508. Here, however, the congressional concern for uniformity of regulation with respect to the labeling requirements for products within the FHSA is unambiguous. We find it impossible to say that appellant has not propounded a claim on this question sufficiently substantial to warrant a trial in which the necessity for the additive label and the seriousness of its effect upon the interstate marketing of pressurized products can be explored.

Turning to the FIFRA, that Act regulates "economic poisons" regardless of whether sold in pressurized containers or in other packaging, see 7 U.S.C. § 135 (a).[10] Substances within the FIFRA are specifically excluded from the coverage of the FHSA, see 15 U.S.C. § 1261 (f) (2); the labeling required for such products is specified by 7 U.S.C. § 135 (z)[11] and by regulations promulgated under 7 U.S.C. § 135d by the Secretary of

9. Appellees place substantial reliance on the fact that the Department of Health, Education and Welfare has indicated that it does not consider the requirement that the New York City Fire Department Certificate or Permit number appear on the label of each pressurized container stored, sold, or used in the City of New York to be violative of the express preemption clause in the FHSA. In Chrysler Corp. v. Tofany, *supra,* 419 F.2d at 511–512, this court's decision that the local regulations at issue were not in conflict with a federal regulation was influenced, in part, by the opinion of the promulgating authority, the Federal Highway Administration, that the federal regulation was not intended to deal with the particular matter which the states sought to regulate. Here, however, we deal with a federal statute, not with federal regulations. Thus, while the views of the responsible administrative authorities are welcomed, they are to be accorded no greater weight than the logic which supports them. Compare Thorpe v. Housing Authority, 393 U.S. 268, 276, 89 S.Ct. 518, 21 L.Ed. 2d 474 (1969).

10. The term "economic poison" means (1) any substance or mixture of substances intended for preventing, destroying, repelling, or mitigating any insects, rodents, nematodes, fungi, weeds, and other forms of plant or animal life or viruses, except viruses on or in living man or other animals, which the Secretary shall declare to be a pest, and (2) any substance or mixture of substances intended for use as a plant regulator, defoliant or desiccant.

7 U.S.C. § 135(a).

11. 7 U.S.C. § 135(z) provides in part:

The term "misbranded" shall apply—

* * * * *

(2) to any economic poison—

* * * * *

(c) if the labeling accompanying it does not contain directions for use which are necessary and if complied with adequate for the protection of the public;

(d) if the label does not contain a warning or caution statement which may be necessary and if complied with adequate to prevent injury to living man and other vertebrate animals,

Agriculture. A myriad of labeling regulations have been published, including provisions dealing with warnings as to flammability.[12] However, since in contrast to the FHSA, the FIFRA contains no explicit expression of congressional intent to preempt local regulation of products within the Act, the City Regulations must fall only if they are in irreconcilable conflict with the labeling requirements of the FIFRA.

CSMA contends that such a conflict exists. Apparently the testing procedures under the FIFRA regulations and the City Regulations differ materially with respect to the determination of the labeling as to flammability that a pressurized product should bear. Consequently, differences have been found to result in the label as to flammability which the FIFRA regulations and the City Regulations would require, a fact which an affidavit submitted by the appellees to the court below acknowledges.[13] From the information before us, it appears that certain products which would require no special label as to flammability under the FIFRA[14] would be required to be marked "COMBUSTIBLE" under the City Regulations. It could be argued that there is no irreconcilable conflict between the City and the federal regulatory schemes, that the City would merely require more than would the federal government in certain borderline cases. However, if the status of no special label under the federal law were viewed as a distinct category, the City Regulations would, in fact, be inconsistent with the FIFRA regulations rather than supplemental. Indeed, it could be contended that the conflict between local and federal requirements is most significant where federal law would require no special label and the City Regulations would.

Without doubt, in light of the Supreme Court's stringent mandate in Florida Lime & Avocado Growers, Inc. v. Paul, *supra*, 373 U.S. at 142, 83 S.Ct. 1210, 10 L.Ed.2d 248, CSMA may have difficulty in ultimately establishing an irreconcilable conflict here. Still, the question is not insubstantial for, as the Supreme Court has recently said, "[t]he constitutional principles of preemption, in whatever particular field of law they operate, are designed with a common end

vegetation, and useful invertebrate animals;

* * * * *

12. *Pressurized household insecticides.* Since many of these products contain significant amounts of petroleum distillates, other combustible substances, and/or halogenated hydrocarbons yielding irritant substances in the presence of open flame or heated surfaces, and since bursting or leakage of contents may occur at high temperatures, all pressurized products (except as specified hereafter) should bear the following warning or its practical equivalent:

WARNING: Contents under pressure. Do not puncture. Do not use or store near heat or open flame. Exposure to temperatures above 130° Fahrenheit may cause bursting. Never throw container into fire or incinerator.

Pressurized products which have extreme flammability or explosive hazards will be considered separately and additional precautionary labeling prescribed. Methods for determining the need for such additional precautionary labeling may be obtained from the Director, Plant Pest Control Division, Agricultural Research Service, U. S. Department of Agriculture, Washington, D. C. 20250. It is the responsibility of the registrant to provide precautionary labeling which will be adequate, if complied with, to prevent injury to persons using or handling his product.

Formerly 7 C.F.R. § 362.113(f) (3), now redesignated 7 C.F.R. § 2762.113(f) (3). See also 7 C.F.R. § 2762.121(g) (3).

13. "[Two] products [which] are insecticides . . . would not require any labeling under the FIFRA, while New York would require a warning as to combustibility." Defendants-Appellees' Affidavit of Milton Fishkin, in Opposition to Motion for Temporary Injunction.

14. All aerosols containing a substance regulated by the FIFRA must bear a standard warning, see fn. 12, *supra*, which is apparently directed at the explosive danger inherent in all pressurized products regardless of the flammability of the ingredients, see fn. 1, *supra*.

in view: to avoid conflicting regulation of conduct by various official bodies which might have some authority over the subject matter." Amalgamated Ass'n of Street Elec. Ry. & Motor Coach Employees v. Lockridge, 403 U.S. 274, 285–286, 91 S.Ct. 1909, 1917, 29 L.Ed.2d 473 (1971). Indeed, with federal laws taking over many fields previously regulated by the states or not regulated at all, it is quite conceivable that, in order to avoid undue burdens on interstate commerce, the Supreme Court may move toward a somewhat broader position on preemption than it held a decade ago. In any event, the decision here is not one we either need or ought to make in the absence of a full evidentiary record.

In summary, we cannot say at this juncture that CSMA has failed to state any claim warranting consideration on the merits. Contrary to the conclusion reached by the district court, what is needed here is not further delay until some future state enforcement proceeding, but an orderly factual investigation by a federal court of the relationship between the City Regulations and the relevant federal laws. We therefore reverse the decision of the district court dismissing the complaint and remand for a trial on the merits. In addition, having concluded that CSMA has shown a substantial likelihood of at least some success on its claims and having weighed the substantial harm to appellant and its members should the City Regulations be permitted to take effect at once against the minimal harm to the City of New York and its residents if the matter should temporarily be left only to federal regulation, we grant CSMA's request for injunctive relief pending decision of the proceedings below.

OAKES, Circuit Judge (dissenting):

I agree with the majority that the trial court had jurisdiction in a pre-enforcement proceeding under Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), and that CSMA had standing to seek judicial review under, *e. g.*, Scenic Hudson Preservation Conference v. F.P.C., 354 F.2d 608 (2d Cir. 1965), cert. denied, Consolidated Edison Co. v. Scenic Hudson Preservation Conference, 384 U.S. 941, 86 S.Ct. 1462, 16 L.Ed.2d 540 (1966). Although this is not a case involving individual rights, Harman v. Forssenius, 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965), or personal reputation, Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), where abstention might be unseemly, *see* Zwickler v. Koota, 389 U.S. 241, 248, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967), there appear here to be no questions of state law that would be dispositive of the case, Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), or, with one possible exception, affect decision of the questions arising under the Federal Constitution. Spector Motor Co. v. McLaughlin, 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101 (1944). *See* County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed. 2d 1163 (1959). Nor, in view of the claim of federal preemption, is this a case where abstention might be proper because the local administrative order is based upon predominantly local factors. Alabama Public Service Comm. v. Southern Ry. Co., 341 U.S. 341, 347–349, 71 S.Ct. 762, 95 L.Ed. 1002 (1951); Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). *See generally* Wright, Federal Courts 196–204 (2d ed. 1970). I believe, however, that the judgment of the trial court should be affirmed because appellants' claims of preemption are not sufficiently substantial to warrant consideration of the merits.

The products here are in common household use. The standard aerosol can contains a marketable ingredient (whipped cream, Christmas snow, plant polisher, pet shampoos) and a compressed gas propellant by which the product is self-propelled out of the container when a valve is depressed. Both the main ingredient and the gas propellant may be flammable or nonflammable; the

flammable gas propellant is a hydrocarbon and the nonflammable a fluorocarbon. The ingredient is dispensed when the liquid gas propellant in the container separates from the ingredient, vaporizes, and fills the space above the main ingredient, exerting pressure against the sides of the container and the main ingredient; the pressure forces the main ingredient up a tube to the point of discharge when the valve is pressed. As the main ingredient is dispensed the space filled by the vaporized gas propellant enlarges, until the product in the can is wholly dispensed. Heat may cause the gas to expand to a point of explosion, and according to the affidavit of the Chief Inspector of the Division of Fire Prevention of the City Fire Department, a chemical engineer, this explosive potential, always present when a can is heated whether the propellant is flammable or not, presents a particular hazard where there is a fire. Hydrocarbon gas propellants such as propane, isobutane and butane, or a combination of them, create a blowtorch flame.

The New York City Fire Department has been attempting to regulate pressurized products since 1963. The proposed regulations here involved were finally published on January 31, 1970, with an effective date of July 1, 1970, and some further amendments were made between the publication and effective date of the regulations. In general the regulations require testing and approval prior to sale or storage of pressurized products; specifically set forth tests for classification of the propellants as extremely flammable, flammable or combustible; limit the size of the containers in which the products may be sold or stored; and require cautionary and very precise consumer labeling and storage labeling of cartons, cases or bulk packages of pressurized products. The regulations expressly conform both test methods and labeling requirements to specifications in the Federal Hazardous Substances Act and regulations thereunder, 21 C.F.R. 191. Appeals from the Fire Commissioner's administration of these regulations may be taken to the City Board of Standards and Appeals pursuant to Sections 666–1.0(3) and 666(6)–1.0 of the New York City Administrative Code (1970), and a number of such appeals are pending but have been stayed while this case has been in process.

Appellant's contention here that federal law has occupied the field must be examined, as the majority opinion concedes, in the light of Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963):

> The principle to be derived from our decisions is that federal regulation of a field of commerce should not be deemed preemptive of state regulatory power in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained. See, *e. g.*, Huron Portland Cement Co. v. Detroit [362 U.S. 440, 80 S.Ct. 813, 4 L.Ed.2d 852 (1960)].

The principle has in no way been weakened by the 5–4 decision in a labor preemption case, some of the language of which is quoted by the majority here. *See* Amalgamated Ass'n of Street Elec. Ry. & Motor Coach Employees v. Lockridge, 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971).

Only recently this court held in Chrysler Corp. v. Tofany, 419 F.2d 499 (2d Cir. 1969), that state regulation of an extra auto headlamp was not preempted by the National Traffic and Motor Vehicle Safety Act of 1966, 15 U.S.C. §§ 1381–1425, and regulations pursuant thereto, 49 C.F.R. § 371.21. The Act challenged in *Tofany*, supra, included a preemption clause, 15 U.S.C. § 1392(d). Similarly, in a case involving the labeling of stuffed turkeys, this court found no irreconcilable conflict between the state scheme of regulation under the New York Agriculture and Markets Law § 193 (McKinney Consol. Laws c. 69 1965), and the federal scheme of regulation under the Poultry Products Inspection Act, 21 U.S.C. § 457. Swift & Co. v. Wickham, 364 F.2d 241 (2d Cir.

1966), cert. denied, 385 U.S. 1036, 87 S.Ct. 776, 17 L.Ed.2d 683 (1967).

Bearing in mind that "where the state's police power is involved, preemption will not be presumed," Chrysler Corp. v. Rhodes, 416 F.2d 319, 324 n. 8 (1st Cir. 1969), close examination of the federal statutes and regulations convinces me that there is here no viable claim of irreconcilable conflict with the otherwise concededly valid New York City Fire Department pressurized products regulations.

Certain pressurized products obviously fall within the definition of a "hazardous substance" in 15 U.S.C. § 1261(f), and accordingly the provisions of the federal statute on testing and labeling apply to them,[1] as do the regulations adopted by the Food and Drug Administration.[2] But I fail to see any conflict whatsoever with the City Fire Department regulations which, as previously stated, provide that "cautionary labeling of the individual consumer package and the cartons, cases or similar bulk package" of household products within the purview of the Federal Hazardous Substances Act "shall be in accordance with the test methods and labeling requirements as specified under the Federal Hazardous Substances Act . . . and regulations adopted pursuant to that act . . . ." Sec. 5(A) (3). The majority visualizes some conflict despite this provision because Sec. 5(B) of the New York City Fire Department regulations require identification labeling on both the containers themselves and bulk packages of containers—identification of the name and address of the manufacturer, agent or distributor listed or authorized in the Fire Department Certificate of Approval or Permit to Manufacture and of the Approval or Permit number. But this very limited identification labeling is additive only. What is the conflict with the *cautionary* labeling required by the Federal Hazardous Substances Act? The Fire Department labeling simply assists in the enforcement of other city regulations relating to limitation of capacities[3] and storage,[4] which are undeniably non-preempted exercises of state police power.

Additionally, as in Chrysler Corp. v. Tofany, supra, there is here an express but limited preemption provision in the Federal Hazardous Substances Act, a provision which was apparently suggested to Congress by appellant here[5] and reads as follows:

> It is hereby expressly declared that it is the intent of the Congress to

1. See 15 U.S.C. § 1261(*l*), (p).

2. See 21 C.F.R. §§ 191.110, 191.15, 191.16.

3. LIMITATION OF CAPACITIES
No pressurized containers shall exceed twenty-four (24) fluid ounces nominal capacity for EXTREMELY FLAMMABLE pressurized products. For FLAMMABLE or COMBUSTIBLE products containers shall not exceed thirty two (32) fluid ounces nominal capacity.
Pressurized ether products shall only be packaged in metal containers not exceeding eight (8) fluid ounces in nominal capacity.
Fire Department Regulations, Sec. 4, as amended.

4. STORAGE
A. EXTREMELY FLAMMABLE, FLAMMABLE or COMBUSTIBLE pressurized products exceeding a total capacity of fifty (50) gallons by volume shall be stored in either a sprinklered area, or in an area having natural ventilation or which is ventilated by an open duct terminating in the outer air. Duct shall have a cross-section of at least eight (8) inches.
B. EXTREMELY FLAMMABLE, FLAMMABLE or COMBUSTIBLE pressurized products exceeding two hundred (200) gallons total capacity by volume, shall be stored only in a building equipped with an approved automatic sprinkler system or in a fireproof storage room in a fireproof building, or in a fire-resistive storage room in a non-fireproof building vented to the outer air and equipped with an approved automatic sprinkler or other extinguishing system approved by the Fire Commissioner.
Fire Department Regulations, Sec. 6.

5. See letter to Rep. Staggers from Assistant Secretary of Health, Education and Welfare Huitt, commenting on the Child Protection Act of 1966, reprinted in 3 U.S.Code Cong. & Admin.News, pp. 4102–06 (1966).

supersede any and all laws of the States and political subdivisions thereof *insofar as they may now or hereafter provide for the precautionary labeling* of any substance or article intended or suitable for household use (except for those substances defined in sections 2(f) (2) and (3) of this Act) which differs from the requirements or exemptions of this Act or the regulations or interpretations promulgated pursuant thereto. Any law, regulation, or ordinance purporting to establish such a labeling requirement shall be null and void. Federal Hazardous Substances Act, as amended (Pub.L. 91–113, § 4(b) (1), 83 Stat. 190 (1969), 15 U.S.C.A. § 1261, note (b) (emphasis supplied).[6]

It is the states' and cities' "own special forms of warnings" which the Federal Hazardous Substances Act "limited preemption amendment" is directed against, H.Rep. 2166, 89th Cong., 2d Sess. (1966), not other forms of complementary enforcement. It is *cautionary* labeling of substances which the Federal Hazardous Substances Act prohibits, not identification labeling.

The majority opinion says that "precautionary labeling" in the preemption provision means "all labeling." I believe that Congress has sufficient wisdom to say "all labeling" if it means "all labeling." When it chooses to say "precautionary labeling," I believe it means labeling pertaining to cautions or warnings. Congress did not say that local or state bodies cannot require identification of products the sale of which they could prohibit.

The majority raises the hypothetical and to me entirely inconsequential danger of a "proliferation of local requirements with respect to identification labeling." When and if such a proliferation occurs it seems to me that may be a matter for Congressional action.

6. The House Committee Report accompanying the 1966 amendment to this Act provides in pertinent part:

PREEMPTION

In 1960 this committee and the Senate committee emphasized the importance of uniform regulation of household products at which the act is aimed, which are sold nationally and across State lines. It is impractical, unnecessary, and undesirable for each such product to be labeled specially for those States and cities which have developed their own standards for requiring warnings and their own special forms of warnings over the years during which there was no Federal law. The committee now recommends a *limited preemption amendment* which would encourage and permit States to adopt requirements identical with the Federal requirements for substances subject to the Federal act, and *to enforce them to complement Federal enforcement,* but at the same time would free marketers of products sold interstate from varying or adding labeling requirements for such substances now existing or which States and cities might otherwise adopt in the future. This amendment also *precludes State or local requirements for cautionary labeling* of substances (distributed interstate or imported) where the alleged hazard is of the general character dealt with by the Federal act but is not of sufficient degree to require cautionary labeling as a hazardous substance under the Federal act; for example, since under the Federal act a substance is not deemed hazardous on account of flammability unless it has a flashpoint of 80° F. or below, substances with a higher flashpoint could not be made subject to State or local warning requirements relating to flammability. On the other hand, if the hazard involved is of a kind not dealt with the Federal act, *e. g.*, the hazards involved in power lawnmowers, the States and localities would continue to be free to impose warning requirements though there is no such Federal requirement. Moreover, *the limited preemption amendment relates only to labeling and would not preclude States or localities from prohibiting altogether an article,* such as fireworks, which would not be banned under the Federal act if properly labeled.

H.Rep.No.2166, 89th Cong., 2d Sess. (1966) (emphasis supplied) U.S.Code Cong. & Admin.News, p. 4097.

See also letter of Assistant Secretary Huitt, footnote 5, *supra*, 3 U.S.Code Cong. & Admin.News at p. 4104 (1966).

For the federal courts to anticipate such an event and change by a wave of the judicial wand the prohibition against "precautionary labeling" into one against "all labeling" strikes me purely and simply as an exercise of the legislative function.

Beyond this, here the federal enforcement agency, H.E.W., took the view, in a letter to the New York City Fire Department dated February 20, 1968 (as did the federal enforcing agency in Chrysler Corp. v. Tofany, *supra*), that the respective federal statutes and regulations did not preclude the challenged local regulations,[7] a view swept aside in a footnote by the majority opinion as apparently lacking in "logic." Appellant ingeniously argued before us that, because this court narrowly construed the preemption provision involved in the *Chrysler* case, "chaos" accompanied enforcement of the state regulations and brought about a reversal of the Department of Transportation's position taken before this court to one favoring preemption.[8] But the Department of Health, Education and Welfare has not changed its position here. I do not envision any such "chaos" of enforcement, if indeed that were what precipitated the Department of Transportation's change of viewpoint after *Chrysler*. I take it that by silence the majority foresees no such chaos either; it simply rejects the H.E.W. view as not founded on "logic." I should suppose, however, that an administrative interpretation of the words "precautionary labeling" to mean "precautionary labeling" and not "all labeling" was at least as logical a reading of the statute as any other.

It is argued that the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA" or the "Insecticide Act")[9] and the regulations originally issued thereunder by the Food and Drug Administration but now administered by the Environmental Protection Agency,[10] preclude New York City Fire Department regulation of insecticides, plant regulators and weed killers sold in pressurized containers. It is claimed that since the Environmental Protection Agency must review and register pesticides under the Insecticide Act before they can move in interstate commerce, New York City cannot ban the sale of any such registered product. The Insecticide Act regulates "economic poisons" such as DDT,[11] however, whether or not those poisons are sold as pressurized

7. "This replies to your letter of February 7, 1968, concerning approval or permit numbers.

"As we interpret section 17(b) of the Federal Hazardous Substances Act, it does apply only to cautionary labeling and would not preclude a requirement that labels approved by the New York City Fire Department also bear the approval or permit number."

8. 36 F.R. 10744-45 (June 2, 1971).

9. The term "economic poison" means (1) any substance or mixture of substances intended for preventing, destroying, repelling, or mitigating any insects, rodents, nematodes, fungi, weeds, and other forms of plant or animal life or viruses, except viruses on or in living man or other animals, which the Secretary shall declare to be a pest, and (2) any substance or mixture of substances for use as a plant regulator, defoliant or desiccant. [7 U.S.C. § 135(a) (1), (2) (1964)]

(z) The term "misbranded" shall apply—* * *

(2) to any economic poison—* * *

(c) if the labeling accompanying it does not contain directions for use which are necessary and if complied with adequate for the protection of the public;

(d) if the label does not contain a warning or caution statement which may be necessary and if complied with adequate to prevent injury to living man and other vertebrate animals, vegetation, and useful invertebrate animals; * * * [7 U.S.C. § 135(z) (2) (c), (d) (1964)]

10. See 7 C.F.R. § 2762.113(f) (3), formerly 7 C.F.R. § 362.113(f) (3).

11. See Hubbard-Hall Chemical Co. v. Silverman, 340 F.2d 402 (1st Cir. 1965); Gonzalez v. Virginia-Carolina Chemical Co., 239 F.Supp. 567 (E.D.S.C.1965)

products; hence that Act in no way conflicts with state or local regulation of pressurized products.

The majority opinion relies on language in the FIFRA regulations, however, which purports to regulate the labeling of "pressurized household insecticides" which do not have "extreme flammability or explosive hazards." See 7 C.F.R. § 2762.113(f) (3), formerly 7 C.F.R. § 362.113(f) (3), and § 2762.121 (g) (3). Even if the majority were correct, however, this would not justify an injunction against Fire Department regulation of the myriad of products other than pressurized insecticides. Moreover, I fail to see any conflict between these FIFRA regulations and the Fire Department regulations. The majority finds a conflict because two insecticides referred to in an affidavit submitted by appellees would apparently be required under the City regulations to bear a warning of combustibility while they would require no label of any sort under FIFRA regulations. The majority anticipates the counter argument that there is no irreconcilable conflict between the regulatory schemes when in two or three isolated borderline cases the City requires a label where the FIFRA regulations require none. Additionally, however, there is nothing in the record to indicate that the City cautionary label in these instances would not be acceptable to the federal authorities. Moreover, the FIFRA regulations do not, for example, purport to tell us what kind of testing will be required to determine "combustibility" or "flammability" as opposed to extreme flammability or explosiveness. An irreconcilable conflict is thus presumed where none may well exist. This is the very kind of question which, it seems to me, is better left to case by case examination rather than determination in a sweeping federal court injunction proceeding. As the Supreme Court said in Rice v. Chicago Board of Trade, 331 U.S. 247, 255–256, 67 S.Ct. 1160, 1165, 91 L.Ed. 1468 (1947), a case involving, to be sure, state regulations not finally effective:

> Any claim of supersedure can be preserved in the state proceedings. And the question of supersedure can be determined in light of the impact of a specific order of the state agency on the Federal Act or the regulations of the Secretary thereunder. Only if that procedure is followed can there be preserved intact the whole state domain which in actuality functions harmoniously with the federal system. For even action which seems pregnant with possibilities of conflict may, as consummated, be wholly barren of it.